Turley, J.
 

 delivered the opinion of the court.
 

 The first question for our consideration is, did the
 
 pro-chien amie
 
 have the legal power to compound this debt, which embraces two propositions: 1st, If the judgment had remained at law, could he have done so? 2nd, if he could, can he do so after the case is removed into a Court of Chancery, without the consent of the chancellor? The rights of infants have at all times been guarded with jealous care by
 
 *16
 
 courts of justice, and an interference in any way with their estates, except by persons authorised by law, discountenanced. To such an extent has this principle been carried, that even a father, who is a guardian by nature of Ms infant child, has only the care of his person, and is not permitted to have any control whatever over his property, real or personal. Coke Lit. 184; 1 Eq. Ca. Ab. 30; 3 Rep. in Cha. 165;
 
 2
 
 Mass. Rep. 55; 1 John. Chan. Rep. 3;
 
 2
 
 Wend. Rep. 153. So that if he receive a debt or legacy, he can give no acquittance therefor, and the debtor or executor will be responsible to the infant upon his arriving at full age, as if they had not paid the father. The reason and justice of this ride is obvious, the infant has not discretion to protect his own rights; his father may be totally unworthy of trust and confidence, _and there is no security for his ultimate responsibility. Is there any reason why this principle of law should not bo applied to a
 
 prochien amie,
 
 as well as guardian by. nature? None that we can see, on the contrary, there are additional and striking reasons why it should. The father has every motive of affection and regard for his child, to induce him to attend honestly and faithfully to his interest; a
 
 prochien amie
 
 is, or may be, a stranger to him in feelings, governed by no natural sympathies in his favor, and upon whom there is no obligation for a correct performance of his trust, save his integrity, and the respect in which he may hold public opinion.’; There is no adjudicated case produced, in which it has been determined, that a
 
 prochien amie
 
 has any greater authority over the estate of the minor, whose interest he is protecting, than would a guardian by nature. A judgment, when obtained, forms a part of his estate, and if a father will not be permitted to receive it, because it would not be considered safe in his hands, upon what principle can the
 
 prochien amie?
 
 It is said in argument, that a
 
 prochien amie
 
 and guardian
 
 ad litem
 
 are the same, and that a guardian
 
 ad litem
 
 may acknowledge satisfaction upon a record for a debt recovered at law for the infant; to support which are cited 1 Chitty Black. 372, in note; and 3 Bacon Ab. 617, note b. There is some similarity between a guardian
 
 ad litem uiavendum
 
 and a
 
 prochien
 
 amie, but still a guardian
 
 ad litem
 
 
 *17
 
 and
 
 prochien amie
 
 are not the same, for it is well settled, that though an infant may prosecute a suit by
 
 prochien
 
 amie? • yet he must always defend by guardian. But this question is of little importance, as we do not think that the authorities referred to, support the position that a guardian
 
 ad litem
 
 may receive the money recovered on a judgment in favor of his ward. The position, as above stated, from 1 Blackstone is, that he may acknowledge satisfaction of record, but it does not necessarily follow that he is to receive the money. We apprehend that in England, upon the payment of a judgment, a satisfaction is always entered of record, and this must be done by the person having power to make it, which in the case of infants must be the
 
 prochien
 
 amie, or guardian
 
 ad litem,
 
 but surely, if he were permitted to receive the money and enter the satisfaction, he would not be permitted to carry it out of court, and why? because, as soon as the judgment is. satisfied, his connection with the infant ceases entirely, his office has been performed, and for what purpose shall he take the money.
 

 The case from Moore,
 
 52,
 
 referred to in 3 Bacon, 617, says a guardian was ordered to acknowledge satisfaction for so much as he received upon a judgment. So far as the court can see, this is the case of a general guardian, who has the care and control of his ward’s estate, and the right to receive and receipt for debts and judgments. We therefore think there is no authority for saying, that in England a
 
 pro-chien amie
 
 may receive and take out of court the judgment debt of a minor, but if it were so there, we would not hesitate in refusing to be governed by a similar principle.
 

 In England, a
 
 prochien amie
 
 is appointed by the court, and he must be a man of character and substance; but here, any person who chooses, can act as such, no matter what his means and standing may be, provided he can give security for cost.
 

 We do not mean to say, that this has been settled by judicial determination, but by a practice so long pursued and acquiesced in, as to render it impossible to alter it, but by legislative enactment.
 

 We have examined this question, as if the
 
 prochien amie
 
 had really received payment of the judgment, when nothing
 
 *18
 
 ^ul'^ler fr°m the truth. It is true it is called a payment, although it is no where stated what and how much was paid, yet we ascertain from the proof that a horse formed - part thereof; then tins
 
 was
 
 compounding the judgment, and we apprehend that thfs is the first time that it was every seriously contended that a
 
 prochien amie
 
 had the power to compound the claim of the minor, whose rights he was enforcing.
 

 But supposing all this was
 
 not
 
 so, that a
 
 prochien mile’s
 
 power over a judgment continues till it is satisfied, and that he has the' right to receive and enter satisfaction, what becomes of this power, when the person against whom the judgment at law has been obtained, carries the matter in controversy into a Court of Chancery? Does
 
 the prochien amie
 
 go with it? We apprehend not. He has no interest in the judgment. No decree can be made against him and he cannot defend the minors, but the court appoints them a guardian
 
 ad litem;
 
 can it be possible then that he can do my thing thereafter, by which their rights are to be effected? Surely not. In England, before the judgment could be enjoined, the money had to be paid into court. No chancellor would permit the
 
 prochien
 
 amie, who has prosecuted the suit at law, to withdraw the funds from court, but would direct the clerk and master, upon a determination of the matter in controversy in favor of the infant, to vest it for his interest, if he had
 
 no
 
 general guardian to whom it could be paid. In this country, upon a judgment being enjoined, instead of requiring the money to be paid into court, bond and security is taken for the performance of the decree; but this does not change the practice of the court; the money upon being collected will still, in the absence of a guardian, be loaned at
 
 interest for the
 
 bepefit of the minor, under the superintending care and control of the court. It then follows, that the attempt made in this case by the
 
 prochien amie
 
 to compound and settle the matter in controversy, between the complainant and the infant defendants, can in no way effect their rights. .
 

 The second question for consideration is, whether, inasmuch, as the defendants, Isabella Kaigler and Wm. W. Kaig-
 
 *19
 
 3er,~ are distributees of the
 
 prochien
 
 amie, David Kaigler, deceased, and, as it appears from the answer of his administrator, that a sufficient amount of his effects have been distributed to them to cover the amount of the judgment compounded with the complainant, they are not bound to submit to the act of the
 
 prochien
 
 amie, compounding the debt, and look for a payment thereof to his estate. This involves the power of the court to decree a satisfaction in favor of infant defendants against the administrator of David Kaigler, and the fairness of the transaction by which the judgment was compounded between the complainant, Thomas Miles, and John B. Miles, the attorney in fact. Whether the court has the power to give the decree asked against the administrator, we do not think it necessary to determine, as we are satisfied that the fairness of the settlement is more than questionable. Thomas Miles had shown uo disposition whatever to pay the demand; he was particularly defending himself against it] he had not even shown a disposition to make any arrangement whatever about the controversy, until John B. Miles comes forward with a power of attorney, authorising him to compound and compromise the same] but when that takes place, we find a great anxiety on his part to put an end to the suit by settlement with the attorney. To such an extent is this carried, that he proceeds to do so, notwithstanding he is informed that David Kaigler had written a letter to the attorney at law, who was prosecuting the claim against him, not to pay the money, if recovered, to John B. Miles, or acknowledge his agency in the transaction, which letter was shown to him, and which he was informed was a revocation of the power of attorney. Why all this, unless he expected to make a favorable compromise? Again, why not inform us what was paid, and how much? Complainant; in bis amended bill, does not state, nor does John B. Miles, in his deposition state the amount — suspicious circumstances. So, though we do not say there is proof sufficient to authorise us to determine that the settlement was fraudulently made, yet we do say, that it is of so doubtful a character, that a Court of Chancery ought not to establish rights under it, and that the complainant, if he have any recourse against the administrator
 
 *20
 
 of David Kaigler, deceased, or tbe attorney in fact, John B. Miles, ought to be left to pursue it at law. This we the more readily do, because the debt was compounded, not paid; and if the complainant be entitled to remuneration therefor, it should be only for the amount he actually advanced, which is unliquidated, and cannot be ascertained by a reference to the clerk and master, without taking much more proof, and which when taken very possibly might satisfy the court of the iniquity of the transaction, and besides, all the questions arising out of the compromise can be better settled by a jury than a Court of Chancery.
 

 We therefore reverse the decree of the court below, and dismiss the bill without prejudice as to any right the complainant may have at law, arising out of this transaction, against either the administrator of David Kaigler, or John B. Miles,
 

 Decree reversed-,