Bettie Lois TUNE, Administratrix of the
Estate of Willie Joe Davis, deceased,
Plaintiff,

v.

LOUISVILLE & NASHVILLE RAIL-
ROAD COMPANY, a Corpora-
tion, Defendant.

Civ. A. No. 2903.

United States District Court
M. D. Tennessee,
Nashville Division.

Oct. 31, 1963.

T. Arthur Jenkins, Manchester, Tenn., for plaintiff.

David M. Keeble, of Hooker, Keeble, Dodson & Harris, Nashville, Tenn., for defendant.

WILLIAM E. MILLER, Chief Judge.

Plaintiff has brought suit in this court as administratrix of the estate of Willie Joe Davis, deceased, for death benefits arising under the Federal Employer's Liability Act, Title 45, Sec. 51, U.S.C.[1] (herein referred to as FELA). Deceased worked for defendant railroad (L & N) and was killed in Dalton, Georgia on April 13, 1959. At the time of his death deceased was survived by his legal wife, Alberta Smith Davis, and two legitimate minor children born to her, living in Franklin County, Tennessee. Plaintiff alleges that deceased, at the time of his death and some years prior thereto, had been living with her in Murfreesboro, Rutherford County, Tennessee, and left three minor illegitimate children, born to her, and dependent upon him for their support.

On June 5, 1959 Alberta Davis was appointed administratrix of the estate of deceased by the County Court of Franklin County. On the same day she accepted a draft from L & N in the amount of $13,510.00 and without court approval signed a release

"* * * of all claims, demands, or causes of action of every character whatsoever, which I or the estate of Willie Joe Davis, deceased, have or has as a result of injuries to and loss of life and damage to the property of said Willie Joe Davis * * *"

Subsequently plaintiff was appointed administratrix of the estate of deceased by the County Court of Rutherford County, Tennessee, and thereafter instituted this suit as personal representative of the deceased for the use and benefit of his

1. Title 45, Sec. 51, U.S.C. provides that: "Every common carrier by railroad * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of * * * such carrier * * *."

widow and five minor children. In her amended complaint plaintiff asserted that the release signed by Alberta Davis was not binding upon the minor children as it was not approved by any court, because it was fraudulently induced, and because on its face it purports to release only her rights and the rights of the deceased's estate. Defendant has moved for summary judgment. Since the validity of plaintiff's appointment as administratrix is not challenged by the motion, only two issues are raised:

1. Are the illegitimate children entitled to the benefits conferred by Title 45, Section 51, U.S.C.?
2. Is the release entered into by the widow a bar to the action brought on behalf of any or all of the dependents of the deceased?

■ It is not necessary to the disposition of the defendant's motion for summary judgment to decide whether "children" are to be determined as a matter of state or federal law.[2] If they are to be determined under federal law they would be included. See: Middleton v. Luckenbach S. S. Co., 70 F.2d 326 (2d Cir. 1934) and Civil v. Waterman S. S. Corp., 217 F.2d 94 (2d Cir. 1954). Likewise, if they are to be determined as a matter of state law they would be included for the reasons stated hereafter.

In looking to state law there are two preliminary questions: (1) the law of what state? and (2) what part of the applicable state's law?

■ Here the decedent was injured and died in Georgia. Under state wrongful death actions, substantive rights are determined according to the law of the place of injury, *lex loci delicti*. Nashville & C. R. Co. v. Eakin, 46 Tenn. 582 (1869); Parsons v. American Trust & Banking Co., 168 Tenn. 49, 43 S.W.2d 698 (1934). If Congress has relinquished to the individual states its right to determination of familial relationships, then from the language used in DeSylva v. Ballentine, 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415 (1956), it would appear that the law of the state where the accident occurred would not necessarily be applicable.

"To decide who is the widow or widower of a deceased author, or who are his executors or next of kin,

2. This problem was discussed extensively by the New Jersey Supreme Court in Hammond v. Pennsylvania Ry. Co., 31 N.J. 244, 156 A.2d 689 (1959). The Supreme Court of the United States has not specifically determined whether the word "children" as used in the FELA is to be determined as a matter of state or federal law, although in Seaboard Air Line Ry. v. Kenney, 240 U.S. 489, 36 S.Ct. 458, 60 L.Ed. 762 (1916) it was held that "next of kin" as used in the FELA was to be determined by state law. The word "child" as used in the Copyright Act (Title 17, § 24, U.S.C.) is also to be determined by state law. DeSylva v. Ballentine, 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415 (1956). But "child" as used in the Death on the High Seas Act (Title 46, § 761, U.S.C.) is apparently to be determined by federal law. Middleton v. Luckenbach S.S. Co., 70 F.2d 326 (2d Cir. 1934), cert. denied, 293 U.S. 577, 55 S.Ct. 89, 79 L.Ed. 674 (1934). See also Civil v. Waterman S.S. Corp., 217 F.2d 94 (2d Cir. 1954). The explanation for these differing results may be that while in the Middleton case the circuit court said that "[t]he rule that a bastard is nullius filius applies only in cases of inheritance," (70 F.2d at 330) and the right to compensation was not a question of inheritance, in the DeSylva case the Court said, "This is really a question of the descent of property, and * * * the controlling question under state law should be whether the child would be an heir of the author." At 582 of 351 U.S., at 981 of 76 S.Ct., 100 L.Ed. 1415. This however does not explain the result in the Seaboard case.

However, it would appear that the Court in the DeSylva case, supra, virtually foreclosed this issue in favor of looking to state law, for there it was said: "The scope of a federal right is, of course, a federal question, but that does not mean that its content is not to be determined by state, rather than federal law. * * * This is especially true where a statute deals with a familial relationship; there is no federal law of domestic relations, which is primarily a matter of state concern." At page 580 of 351 U.S., at page 980 of 76 S.Ct., 100 L.Ed. 1415.

requires a reference *to the law of the State which created those legal relationships."* At page 580, of 351 U.S., at page 980 of 76 S.Ct., 100 L.Ed. 1415 (emphasis supplied).

The Court in the DeSylva case went on to say that there was no controversy as to which state law controlled, for there California was the only state involved. Presumably, had the domicile of the father and that of the child differed the question would then have been raised.

On the other hand, in Seaboard Air Line Ry. v. Kenney, 240 U.S. 489, 36 S.Ct. 458, 60 L.Ed. 762 (1916), the Court quoted from the lower court decision:

"The question is, who was the 'next of kin' at the time of such death in the State where the wrongful death occurred?" At page 492, of 240 U.S., at page 459 of 36 S.Ct., 60 L.Ed. 762.

and then said:

"[I]t was held that next of kin for the purpose of the recovery under the act of Congress were the next of kin as established *by the law of the State where the right to recover* obtained." At page 492 of 240 U.S., at page 459 of 36 S.Ct., 60 L.Ed. 762 (emphasis supplied).

However, in that case the only state concerned was North Carolina as the deceased had been domiciled in North Carolina at the time of his death, and had been killed there.

■ The predominant consideration here is the legal relationship between these children and their putative father. The burden of caring for them will fall on the state in which they reside. Any obligation of support or other legally recognized relationship between them and their putative father in this case must arise under the law of Tennessee, the state with the paramount interest in the matter. In this respect the state of Georgia has no interest or concern. Its only connection is by virtue of the fact that the deceased was killed in Georgia. Since the FELA is national in its scope, the fact that the employee was killed in Georgia should not require a result different from that which would have obtained had the decedent been killed in Tennessee. Accordingly, Georgia law should not be deemed controlling, although from a cursory examination of the law of Georgia it appears that there as a matter of state law, illegitimate children would not be entitled to recover under the FELA.

■ Next must be determined what part of the law of Tennessee should be considered controlling. In the DeSylva case the Supreme Court held that disposition of the copyright was:

"really a question of the descent of property, and we think the controlling question under state law should be whether the child would be an heir of the author." At page 582 of 351 U.S., at page 981 of 76 S.Ct., 100 L.Ed. 1415.

However, this is not controlling as to the FELA. The Copyright Act is concerned with the continuation or transmission of a federally created property right. There the author had a statutory right during his lifetime. It is this right which is being devolved upon certain named beneficiaries. Their right is clearly dependent upon and a derivative of his right. On the other hand, the FELA creates two rights—one for the benefit of an injured employee during his lifetime but which does not survive his death; the other, an entirely new right in the beneficiaries to compensate them for *their* loss upon his death. The FELA is not a "survival act." The right of action which accrues to the beneficiaries is based on the injury to them, not to the deceased, and is measured by the amount of loss suffered by them.

At common law there was no cause of action for wrongful death, and the cause of action for injuries received did not survive the death of the injured party. Lord Campbell's Act (9 and 10 Victoria) provided:

"Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neg-

lect, or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding etc.

"Every such action shall be for the benefit of the wife, husband, parent, and child of the person whose death shall have been so caused, and shall be brought by and in the name of the executor or administrator of the person deceased; and in every such action the jury may give such damages as they may think proportioned to the injury resulting from such death to the parties respectively for whom and for whose benefit such action shall be brought." (from note 1, p. 69 of Michigan Cent. R. R. v. Vreeland, 227 U.S. 59, 33 S.Ct. 192, 195, 57 L.Ed. 417 (1912).

The Federal Employer's Liability Act is fashioned after Lord Campbell's Act. "The distinguishing features of that act are identical with the act of Congress of 1908 [FELA] * * *." Michigan Central R. R. v. Vreeland, supra, 227 U.S., at page 70, 33 S.Ct. at page 196, 57 L.Ed. 417. Lord Campbell's Act has been construed, not as permitting the survival of the deceased's cause of action for his injuries, but rather as creating a new cause of action in the personal representative of the deceased.

"It will be evident that this act does not transfer this right of action to his representative, but gives to the representative a totally new right of action, on different principles." Blake v. Midland Ry. Co., 18 Q.B. 109.

"A totally new action is given against the person who would have been responsible to the deceased if the deceased had lived; an action which * * * is new in its species, new in its quality, new in its principle, in every way new, and which can only be brought if there is any person answering the description of the widow, parent, or child, who under such circumstances suffers pecuniary loss." Seward v. The Vera Cruz, 10 App. Cases 59. (Both cases quoted in the Vreeland case 227 U.S. at pages 69 and 70, 33 S.Ct. at pages 195–196, 57 L.Ed. 417).

■ The Supreme Court has held that under the FELA the crucial test of the right of recovery is dependency, thus a married child of the deceased, not dependent upon him for her support, was *not* entitled to recovery under the FELA.

"[T]he act * * * [is] intended only to compensate the surviving relatives of such a deceased employé for the actual pecuniary loss resulting to the particular person or persons for whose benefit an action is given." Gulf, Colorado & Santa Fe Ry. Co., v. McGinnis, 228 U.S. 173, 175, 33 S.Ct. 426, 427, 57 L.Ed. 785 (1913).

An illegitimate child is not entitled to recover under the Tennessee Wrongful Death Act.[3] Dilworth v. Tisdale Transfer & Storage Co., 209 Tenn. 449, 354 S.W.2d 261 (1962). The result that an illegitimate was not entitled to recover follows from decisions of the Tennessee Court which had held that the Wrongful Death Act was in the nature of the statutes of descent and distribution, e. g., Johnson v. Morgan, 184 Tenn. 254, 198 S.W.2d 549 (1947). And, under the Tennessee statutes of descent and distribution an illegitimate child is not the heir of his putative father. Walsh v. Tipton, 183 Tenn. 28, 190 S.W.2d 294 (1945).

3. "The right of action which a person, who dies from injuries received from another, or whose death is caused by the wrongful act, omission, or killing by another, would have had against the wrongdoer, in case death had not ensued, shall not abate or be extinguished by his death, but shall pass to his widow, and, in case there is no widow, to his children or to his next of kin; or to his personal representative, for the benefit of his widow or next of kin * * *." T.C.A. § 20–607.

However, long ago the Tennessee Supreme Court pointed out that the Tennessee Wrongful Death Act is not a Lord Campbell's Act, but rather is merely a survival act.

> "The damages recoverable, are those suffered by Burke, and which he could have recovered had he lived; and not those suffered by his widow and children in consequence of his being killed.

> "Such is the proper construction to be put on the Code, Secs. 2291, 2292, and 2293.

> "The cause of action is the injury done to Burke, and the right of action of the personal representatives, is for that cause of action, and is the right of action Burke had, and could have prosecuted had he lived; and the damages recoverable, are for that cause of action.

> "The statutes of other States, which have been cited in argument similar, not the same as that of Tennessee, either by express terms or plain implication, give the next of kin a right of action for damages, for the injury done them by the injury done to, or killing of the father, husband, or other relative. The statute of Tennessee goes no further than to give the next of kin the damage that may be recovered by the personal representative, for the injury done his decedent." Louisville & Nashville Railroad Co., v. Burke, Adm'x., 46 Tenn. 45, 49, 50 (1868).

This interpretation has since been followed:

> "[T]he right of action herein was that of the dead man and the right which he would have possessed if he had lived and the recovery is in his right, not in the right of the widow or children or brothers.

    \*    \*    \*    \*    \*    \*

> "Thus it is seen by our authorities, which are absolutely uniform in this State up to the present time, that the recovery for the death of Cooper is not based on whether he left a widow and children or what-not, but is based upon the pecuniary value of the life of the man himself." Memphis Street Ry. Co. v. Cooper, Adm'r., 203 Tenn. 425, at 431, 432, 434, 313 S.W.2d 444, at 447, 448 (1958). Also see: Elliott v. Felton, 119 F. 270 (C.C.A., 6th Cir. 1902).

The difference between the Tennessee Wrongful Death Act and the FELA is obvious. Under the Wrongful Death Act the right of action which passes to the beneficiaries is the same right which had belonged to the deceased prior to his death. The named beneficiaries are entitled to recover whether or not they were dependent upon the deceased for support, just as they, as heirs, are entitled to share in his estate whether dependent or not. This same distinction can be made between the FELA and the Copyright Act (see note 2) (DeSylva case). Neither Congress nor the Tennessee legislature respectively was concerned with dependency in the Copyright Act and the Wrongful Death Act. Rather they were providing for the survival, continuation, and transmission by descent of a property right belonging to the deceased, and by statute permitted this right to extend beyond the death of the owner for the benefit of certain named persons. This in effect is neither more nor less than that which the ordinary statutes of descent and distribution provide.[4]

Consequently, the Wrongful Death Act of Tennessee is not analogous to the FELA, and should not be deemed controlling on the issue whether dependent

---

4. It should be observed that in many other states (e. g. Georgia) the wrongful death act is a Lord Campbell's Act. Nevertheless, the majority of these states do not permit illegitimate children to recover under their Wrongful Death Acts (see Annotation 72 A.L.R.2d 1235). The reason is that dependency of the wife or children is not usually a test of their right to recover. However, dependency is a test of the right to recover under the FELA. (See: 25 C.J.S. Death § 33(c).

934

illegitimate children under Tennessee law are to be included in wrongful death actions under the FELA.

Many years after the passage of the Wrongful Death Act, the Tennessee Legislature passed the Workmen's Compensation Act.[5] The general purpose of the Tennessee Workmen's Compensation Act was to give compensation to the dependents of the deceased employee and relieve the state or public of the burden of their support. This same general purpose has been found in the FELA by the Supreme Court. Gulf, Colo., and S. F. Ry. Co. v. McGinnis, 228 U.S. 173, 33 S.Ct. 426, 57 L.Ed. 785 (1912). The FELA reaches this objective or purpose, not by imposing absolute liability, but rather by giving a cause of action for negligence with certain significant modifications of the common law rule with respect to assumption of risk and contributory negligence, and by conferring a modified remedy. However, that different methods were chosen does not indicate that contrary results or purposes were intended.

The Tennessee Supreme Court has held that under the wording of the Workmen's Compensation Act, illegitimate children are included. Portin v. Portin, 149 Tenn. 530, 261 S.W. 362 (1923); Sanders v. Fork Ridge Coal & Coke Co., 156 Tenn. 145, 299 S.W. 795 (1927); Cherokee Brick Co. v. Bishop, 156 Tenn. 168, 299 S.W. 770 (1927).

The rationale used by the Tennessee Court is that dependency, not relationship, is the test under this section (3). Therefore even *unrelated* children are entitled to compensation if actually dependent. Atkins v. Employer's Mut. Ins. Co., 208 Tenn. 539, 347 S.W.2d 49 (1961). The Tennessee Court did not, as it might have, read into the statute the words "of the employee" as modifying the word

"child", although that court would probably say that the other terms designating beneficiaries require that the persons named (wife, mother, brother, etc.) must stand in such relationship to the deceased employee.

The Tennessee Court in utilizing the test of dependency and including unrelated children was merely interpreting the words of this particular statute and in so doing was not necessarily holding that the word "child" when used in any statute includes illegitimate children. It did, however, indicate that since the purpose of the Workmen's Compensation Act is to relieve the state of the burden of supporting children and other dependents of a deceased workman, then including illegitimate children is not against the public policy of Tennessee.

Tennessee has recently passed a new "Bastardy Act" (T.C.A. §§ 36–222 to 236) which is designed to facilitate the legal recognition of illegitimate children, designate paternal relationships, and cause the putative father to be financially responsible for the support of such children. Tennessee Code Annotated, Sec. 36–224(2) provides that petitions to establish paternity must be brought within two years of the birth of the child unless "paternity has been acknowledged by the father in writing *or by the furnishing of support.*" (Emphasis supplied). The statute (T.C.A. § 36–234) also provides that when "an order of paternity and support has been entered, the child shall be a legitimate child of the defendant for the purpose of inheriting from the defendant." Since the plaintiff in this case has alleged that the deceased had furnished the support for these children, then it would appear that if he were still alive an action under this statute could be brought to establish paternity.

5. Which provides in part that:
"For the purposes of the Workmen's Compensation Law the following described persons shall be conclusively presumed to be wholly dependent: * * * (3) Wife, child, husband, mother, father, grandmother, grandfather, sister, brother, mother-in-law, and father-in-law *who were wholly supported by the deceased workman* at the time of his death and for a reasonable period of time immediately prior thereto shall be considered his actual dependents, and payment of compensation shall be made to them in the order named." T.C.A. § 50–1013. (Emphasis supplied)

It does not appear that the provisions of this Act were meant to apply after the death of the putative father.

"When the father dies prior to the birth of a child this machinery of establishing paternity and establishing the obligation as set forth in the statute above quoted could not be put into force * * *." Shelley v. Central Woodwork, Inc., 207 Tenn. 411, 340 S.W.2d 896 (1960).

However, in that case the Court held that a posthumous illegitimate child would be entitled to receive benefits under the Workmen's Compensation Act.

"[B]ut when it is established, as here, that the deceased is the father of this child then clearly the statute above quoted [TCA 36–223] as to his obligations for an illegitimate child would come into force. This child now under the statute * * * becomes a dependent of this father, and under the authorities above cited, particularly Winfield v. Cargill, Inc. [196 Tenn. 133, 264 S.W.2d 584], the posthumous child is a child in the sense of the law. *This statute * * * clearly establishes it now as the general public policy of this State that the father of an illegitimate child becomes responsible for the things as set forth in this Section 36–223, supra, and that the child becomes a dependent of this father.* Thus it is that under this Act that we are firmly convinced that now the illegitimate posthumous child of a father where the paternity is established is entitled to share in the compensation award for the injury or death of the father employee.

&ast; &ast; &ast; &ast; &ast; &ast;

"The child here under the 1955 Act, supra, codified in 36–223, T.C.A., being a dependent is entitled to compensation for the reasons herein above expressed. This seems reasonable to us *for the purpose of this legislation was to relieve society and the State of the burden of supporting helpless, illegitimate children.* This Act thus made it the legal duty for a father to support his illegitimate child. Thus it is that the child becomes a dependent and under the Workmen's Compensation Act, being a dependent, the child is entitled to recovery." Shelley v. Central Woodwork, Inc., supra, 340 S.W.2d at pages 897, 898 (emphasis supplied).

In a well reasoned case, the New Jersey Supreme Court held that illegitimate children were entitled to maintain an action under the FELA. Hammond v. Pennsylvania Railway Co., 31 N.J. 244, 156 A.2d 689 (1959). That court observed that in the absence of any statutory definition by Congress the word "child" probably must be determined by state law, but that illegitimate children would be included unless to do so would violate the public policy of the state. However, as here the New Jersey Court did not feel compelled to decide whether this was a question of state or federal law, because the result in that case would not have differed in either event. Accordingly, the New Jersey Court determined that although in that state an illegitimate child was not the heir of the father for purposes of inheritance, the rationale behind that doctrine was peculiarly applicable to the laws of inheritance and would be limited thereto. "The sweep of fictions should be contained by the reason for their invention." The New Jersey Court went on to say:

"Specifically pertinent is the fact that in dealing with the very area embraced in the Federal Employers' Liability Act, to wit, compensation for industrial death, the Legislature expressly included 'illegitimate children' within the category of 'dependents' entitled to benefit."

This indicated to the court that the public policy of New Jersey was to include illegitimate children as dependents and recognize certain legal rights on their behalf against their putative father, and thus the court held that illegitimate children were included in New Jersey under the FELA.

█ Since the Tennessee Supreme Court has not specifically ruled on the

question of whether illegitimate children will be included in the FELA, this Court can only look to similar decisions and seek to determine how the Tennessee Court would hold if faced with this issue. Tennessee's rulings on its own Workmen's Compensation Act, the passage by the legislature of the Bastardy Act, and the dictum used in the Shelley case, supra, to state the public policy behind that Act as relating to the support of illegitimate children, indicate that the Tennessee Court on the basis of its own local law and policy would hold illegitimate children included under the FELA.

Such a result would be in line with current trends toward recognizing the realities of relationships and attempting to mitigate the harsh common law attitude toward illegitimate children, an attitude which had its origin in the social, political and economic system of England and which no longer exists, either here or in that country. To deny these children the right to seek recovery primarily serves to punish them for a condition not of their own making, and conceivably will place on the state and the public the burden of their support—a result which Congress and the legislature of this state apparently have sought to avoid. The New Jersey Court found this intention expressed in the specific inclusion of illegitimates in the wording of New Jersey's Workmen's Compensation statute. The Tennessee Supreme Court has interpolated into the wording of the Tennessee statute a similar intention.

When confronted with this same problem the District Court of Massachusetts ruled that under the law of Massachusetts an illegitimate child would not be entitled to recover under the FELA. Bowen v. New York Central Railroad Co., 179 F.Supp. 225 (D.C.1959). But in that case the court pointed out that in Massachusetts (from decisions of the state court) an illegitimate child would not be entitled to recover under the Massachusetts workmen's compensation act under the provisions for "children".[6] Also that court reasoned that at common law in Massachusetts the word "child" had been held to refer only to legitimate children (presumably for purposes of inheritance), and further that "[i]n the absence of any subsequent marriage between the decedent and the mother of these children, their status as illegitimate children is not changed by any acknowledgment or adjudication of paternity." The latter is a result contrary to statutory law in Tennessee (T.C.A. § 36–234). Consequently, it is clear that the result in the Bowen case is peculiar to Massachusetts law, and not authority for this Court holding likewise under Tennessee law.

It is concluded therefore, that illegitimate children under either federal law or the law of Tennessee are included in the benefits conferred by the FELA.

### EFFECT OF THE RELEASE

This action is brought on behalf of the three illegitimate children, the two legitimate children, and the widow of the deceased. The question is whether the release executed by the widow is a bar to the claims on behalf of any or all of these persons.

It is clear that the release can in no way affect the claims on behalf of the three illegitimate children since it is established by the exhibits to the affidavits filed in support of the defendant's motion for summary judgment that the widow either did not know of their existence or did not acknowledge that they were her husband's children at the time she executed the release, or that from the advice of counsel it was her understanding that they had no interests to be considered or protected by her as personal representative of the estate of the deceased.

Obviously it cannot be said that it was the intent of the administratrix (widow) to release any rights of these illegitimate

---

6. Although they had been included in the phrase "members of the [deceased] employee's family", "a class of beneficiaries found in the Massachusetts statute but not in the Federal Employers' Liability Act." P. 227 of 179 F.Supp.

children, and for that reason alone the release does not bar an action on their behalf.

What then is its effect on the two legitimate children? The release, standing alone, would not appear to affect them at all for it is stated to be a release of the claims "which I [the widow] or the estate of Willie Joe Davis, deceased have or has * * *."

It is clear that this right of action granted under the FELA is not an asset in the estate of the deceased.

"The personal representative does not sue by his inherent right as representative of the estate of the decedent, but by virtue of statutory designation and as trustee for the person or persons on whose behalf the act authorizes recovery. And the recovery is not for the benefit of the estate, is not an asset thereof, but is for the personal benefit of the beneficiary or beneficiaries designated by the statute." Southern Ry. Co. v. Stewart, 115 F.2d 317, 321 (8th Cir. 1940), quoting Chicago, Burlington & Quincy Ry. Co. v. Wells-Dickey Trust Co., 275 U.S. 161, 48 S.Ct. 73, 72 L.Ed. 216 (1927).

The deceased's estate clearly had no rights under the FELA, although it may have had rights under either the Georgia or Tennessee Wrongful Death Acts. Consequently, it can be argued that the release does not purport to be a settlement of any more than such rights as the widow, individually, or the estate may have had, and therefore does not release the interests of any of the children.

However, the check which was made out to the widow and endorsed by her as administratrix of the estate of the deceased, states that it was received in "full settlement of any and all claims as a result of injuries to and loss of life and damage to the property of Willie Joe Davis, deceased * * *."

██ The release and the check must be construed together since it appears that they were but separate steps in the same transaction. Taken together they present an ambiguity as to the interests which were being released. The intent of the parties must be developed through parol evidence, and therefore cannot be disposed of on summary judgment.

██ Moreover, plaintiff in her amended complaint has alleged fraud and misrepresentation on the part of the defendant in procuring the release. If proved, this matter may go to vitiate the entire settlement as to all parties with the result that the widow might also be entitled to share in any recovery which may be made.

██ In any event the release of these minor's rights is subject to scrutiny by this Court regardless of the intent of the parties. The general rule concerning release of rights of minors is that:

"While it is proper for a next friend or guardian ad litem to negotiate a compromise and settlement of the infant's rights and claims against the infant, such a compromise and settlement negotiated by the next friend or guardian ad litem is not binding in the absence of judicial approval thereof." 27 Am.Jur., Infants, § 130.

This general rule is also the rule in Tennessee, Miles v. Kaigler, 18 Tenn. 10 (1836), although it is recognized that the validity of a release under the FELA is a question of federal law. Dice v. Akron, Canton & Youngstown R. Co., 342 U.S. 359, 72 S.Ct. 312, 96 L.Ed. 398 (1952) and Maynard v. Durham & Southern Ry. Co., 365 U.S. 160, 81 S.Ct. 561, 5 L.Ed. 2d 486 (1961).

In view of the foregoing it is immaterial for present purposes that under the wording of the Tennessee Wrongful Death Act a widow may be able to compromise the rights of her deceased husband's minor children. Consequently, decisions to that effect cited by defendant (Greenlee v. East Tennessee, Va. & Ga. R. Co., 73 Tenn. 418 (1880); Stephens v. Nashville, C. & St. L. Ry., 78 Tenn. 448 (1882); Railroad v. Acuff, 92 Tenn. 26, 27, 20 S.W. 348 (1892); Holder v. Nashville, C. & St. L. Railroad Co., 92 Tenn.

141, 20 S.W. 537 (1892); Prater, Adm'r v. Tennessee Producers' Marble Co., 105 Tenn. 496, 58 S.W. 1068 (1900); and Spitzer v. Knoxville Iron Co., 133 Tenn. 217, 180 S.W. 163 (1915) are not pertinent.

Accordingly, the motion for summary judgment filed by the defendant must be denied.