Dolores E. HUBER, administratrix of the
Estate of Earl R. Huber, Deceased

v.

The BALTIMORE AND OHIO RAIL-
ROAD COMPANY, a body
corporate.

Civ. A. No. 15755.

United States District Court
D. Maryland.

May 18, 1965.

Paul Berman and Bayard Z. Hochberg, Baltimore, Md., for plaintiff.

H. Russell Smouse, Baltimore, Md., for defendant.

David Freishtat, Baltimore, Md., for movant.

**NORTHROP, District Judge:**

This is an action arising under the Federal Employer's Liability Act (hereinafter FELA), 45 U.S.C.A. § 51 et seq., as the consequence of an accident which took place on March 31, 1964, in the District of Columbia. The accident resulted in the death of plaintiff's husband, Earl R. Huber, who was allegedly acting under the defendant's orders when it occurred. This suit is brought by the plaintiff, Dolores E. Huber, for her own benefit, both individually and as surviving widow, and for the benefit of the four surviving children of the plaintiff and the decedent. Dennis Hannahoe, claiming to be the illegitimate child of the decedent, Earl R. Huber, has petitioned this court by Anna Hannahoe, his mother and next friend, to permit him to intervene.

The intervenor states that one Anna Hannahoe gave birth to Dennis Hannahoe, her illegitimate son, on November 2, 1955. On May 8, 1956, the Criminal Court of Baltimore City, Bastardy Information Docket 1288 of 1955, ordered the decedent, Earl R. Huber, to pay $24.00 per month for the support and maintenance of Dennis Hannahoe. The decedent had been making the monthly payments up to the time he was killed. The intervenor now contends that under the applicable law, he, as an illegitimate child of a deceased father, falls within the protection of the FELA.

The original plaintiff (hereinafter Huber) objects to the intervention on the grounds (1) that the intervenor's claim under the FELA depends on Maryland substantive law, and (2) that under the appropriate law an illegitimate son who was not totally dependent on his putative father and who was not a member of the deceased father's household cannot qualify as a claimant under the FELA.

The intervenor (hereinafter Hannahoe) contends that when referred to the law of the forum, we are confronted with Article 67, Section 2 of the Mary-

land Code, the pertinent part of which reads:

"In any action instituted in the courts of this State where it shall appear that the death of a person has been caused by the wrongful act, neglect or default of a vessel or of another person, firm or corporation, and such wrongful act, neglect, or default shall have occurred outside of the State of Maryland, whether in another state, the District of Columbia or territory of the United States, the courts of this State shall apply the law of such other state, District of Columbia or territory of the United States, to the facts of the particular case, as though such foreign law were the law of this State, * * *."

As Hannahoe points out, Section 2 must be read in conjunction with the Maryland Rule Q41 (formerly Article 67, Section 3); this reads:

"(b) Cause of Action in Foreign Jurisdiction.

"Where such cause of action arose in a foreign jurisdiction, any person who is entitled to bring suit under the laws of such jurisdiction may bring suit in this State."

She then contends that the proper construction of Section 2 compels the application of the law of the District of Columbia which, she further asserts would allow an illegitimate child to recover for the death of his putative father. And, according to her understanding, she implies that Rule Q41(b) confers the substantive right of recovery on the person who would be entitled to bring suit under the applicable law.

In Kaufmann v. Service Trucking Co., 139 F.Supp. 1 (D.Md.1956) Chief Judge Thomsen of this District made what I feel is the proper construction of the predecessor to Rule Q41(b); at page 4 of his opinion:

"The purpose of the Act of 1947 is not entirely clear. It has never been construed by any court in a published opinion, and neither counsel nor I have ever heard of a case in which it has been invoked. The first two subsections, (a) and (b), seem intended to eliminate possible *procedural* difficulties, to make clear *in whose name* a suit authorized by sec. 2 may be brought in the Maryland courts." [1] [emphasis added]

Thus, in deciding whether the law of the District of Columbia or the laws of the State of Maryland should be applied to determine an illegitimate's rights in this case, I do not ascribe to Rule Q41(b) the buttressing effect on Section 2 that Hannahoe does.

Neither do I read Section 2 so broadly as Hannahoe. Her main contention is that since the decedent's death occurred in the District of Columbia, and since the Maryland Lord Campbell's Act instructs the forum court to apply the law of the place of the death, then this court should exclusively apply District of Columbia law—even to decide the substantive question of whether a Maryland illegitimate child is entitled to sue under the FELA. It is true that in Kaufmann, Judge Thomsen referred to the general rule cited in Betts v. Southern R. Co., 71 F.2d 787 (4 Cir. 1934) at page 789,

"that all matters pertaining to the substantive right of recovery under a wrongful death statute, including the right to recover, the nature of the right, and the party in whom it is vested, are governed by the law of the state where the injury resulting in death occurred."

But the issue before Judge Thomsen in Kaufmann was whether an Illinois appointed administrator could maintain an action in a Maryland federal court under the Virginia Wrongful Death Act without having qualified in Virginia. The problem there was more procedural in nature. In this case the first problem with which I am confronted is whether the courts of Maryland would adopt a

1. For further exposition see, Case Note, 2 Md.L.Rev. 168 (1938); and the Comment, 9 Md. L.Rev. 263 (1948).

broad reading of Section 2 and apply the law of the place of death to determine all conceivable issues save strictly procedural ones, or whether they would reserve as for Maryland law the prerogative of determining the right of an illegitimate child to recover for wrongful industrial death. I am constrained to favor the latter view.

■ Section 2 of Maryland's Lord Campbell's Act was enacted to remedy a defect therein readily apparent in actions brought in Maryland for wrongful deaths occurring elsewhere. Prior to 1937 the Maryland Court of Appeals refused to permit such a suit in the Maryland courts unless the wrongful death statute of the jurisdiction where the death took place was alike in design and purpose to the Maryland statute. See, Olewiler v. Fullerton Supply Company, 162 F.Supp. 563 (D.Md.1958). Thus, tortfeasors could escape liability for deaths they caused outside the state by having or locating their assets in Maryland.[2] The issue here is not whether suit is properly brought in Maryland. Further, the problems raised in Kaufmann and Olewiler, which necessarily involved Section 2, are not relevant here. I think the better reasoned approach is that taken by the Tennessee District Court in Tune v. Louisville & Nashville Railroad Co., 223 F.Supp. 928 (D.M.D.Tenn.1963).

Hannahoe contends that Tennessee has no statutory provision comparable to Section 2. The court in Tune, however, recognized the general rule of applying the law of the place of injury.[3] It went on, though, to state its reasons for excepting to the rule in situations similar to the one here:

"The predominant consideration here is the legal relationship between these children and their putative father. The burden of caring for them will fall on the state in which they reside. Any obligation of support or other legally recognized relationship between them and their putative father in this case must arise under the law of Tennessee, the state with the paramount interest in the matter. In this respect the state of Georgia has no interest or concern. Its only connection is by virtue of the fact that the deceased was killed in Georgia. Since the FELA is national in its scope, the fact that the employee was killed in Georgia should not require a result different from that which would have obtained had the decedent been killed in Tennessee. Accordingly, Georgia law should not be deemed controlling, although from a cursory examination of the law of Georgia it appears that there as a matter of state law, illegitimate children would not be entitled to recover under the FELA." (at p. 931)

Were I to accept Hannahoe's argument, if the death had occurred in Georgia or Massachusetts, there apparently would be no recovery; if in Tennessee or New Jersey, there would be. But it is too absurd a situation to have Hannahoe's rights depend on the laws of the jurisdiction where the tort occurred. Her chance of recovery (and the concomitant chance of burden to the state) would be no more predictable (much less reliable) than the flip of a coin. I do not believe that the Maryland Court of Appeals, comprehending the problem, would permit a situation, in which Maryland has the supreme interest, to be controlled by the law of another state: especially when applying

---

**2.** See, Comment 1 Md.L.Rev. 162 (1936–37); see also Judge Chesnut's opinion in Olewiler v. Fullerton Supply Co., supra, particularly at page 566: "Possibly due to these several federal decisions the Maryland Legislature passed an amendment to the Maryland Lord Campbell's Act, now codified as section 2 of Art. 67 of the Code of 1957, which provided that the Maryland Courts should have authority to enforce other State laws in the general nature of Lord Campbell's Act."

**3.** Citing Nashville & C. R. Co. v. Eakin, 46 Tenn. 582 (1869), and Parsons v. American Trust & Banking Co., 168 Tenn. 49, 73 S.W.2d 698 (1934).

other states' laws would produce dissimilar results.

Resolving this first problem, and insofar as non-federal law be dispositive of the principal issue in this case, namely, whether a partially dependent illegitimate child may recover for the death of his putative father, I conclude that Maryland law would control.

 The FELA is a statute which imposes liability on employers for injuries or death inflicted on employees from negligence.[4] And included therein in the first category of those for whose benefit recovery may be made are the "children of such employee". The Supreme Court has not yet decided whether the word "children" is to be interpreted as a matter of federal or state law. But it has held that state law should be applied to determine who are "next of kin" under the Act. Seaboard Air Line Railway v. Kenny, 240 U.S. 489, 36 S.Ct. 458, 60 L.Ed. 762 (1916).[5] However, viewing the issue solely from the point of view of the applicable federal law, it appears that illegitimates would be included within the term "children". Middleton v. Luckenbach S. S. Co., Inc., 70 F.2d 326 (2 Cir. 1934), cert. den. 293 U.S. 577, 55 S.Ct. 89, 79 L.Ed. 674 (1934); Civil v. Waterman Steamship Corp., 217 F.2d 94 (2 Cir. 1954). And were it not for the language in Seaboard, there would be *no* reason for reaching a different result in FELA cases, for the rights conferred by this statute are likewise not ones of in-

heritance, but rather are designed to compensate those who are shown to have suffered some pecuniary loss. Gulf, Colorado & Santa Fe Railway Company v. McGinnis, 228 U.S. 173, 33 S.Ct. 426, 57 L.Ed. 785 (1913). As a matter of federal policy, then, a predisposition exists in favor of construing the word children to include illegitimates.

I therefore conclude that the better view is that dependent illegitimate children should be compensated unless such compensation conflicts with a clearly enunciated state policy. Hammond v. Pennsylvania Ry. Co., 31 N.J. 244, 156 A.2d 689 (1959).[6]

 My examination of Maryland law discloses that there is no such strong state policy against allowing illegitimates to recover. By statute Maryland has directed that the word child be construed to include an illegitimate child except in matters of inheritance, descent or distribution of real and personal property. Maryland Code, 1957, Article 1, Section 16. The right of action under the FELA does not fall within the exclusion enunciated in Section 16. Gulf, Colorado & Santa Fe Railway Co. v. McGinnis, supra. Article 67, Section 4, of the Annotated Code of Maryland provides that an illegitimate child may recover damages based on pecuniary loss suffered by reason of the death of his mother.[7] In the case of State, Use of Holt v. Try, Inc., 220 Md. 270, 152 A.2d 126, 72 A.L.R.2d 1232 (1959), recovery was denied where

---

**4.** 45 U.S.C.A. § 51: "Every common carrier by railroad while engaging in commerce * * * between the District of Columbia and any of the States or Territories, * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee;"

**5.** For further analysis of the pertinent elements in state and federal law on the question of ascertaining "who are children", see footnote 2 in Tune v. Louisville & Nashville Railroad Company, supra, at page 930 of 223 F.Supp. For

a discussion of who may benefit under the FELA's survival action provision and what law should be looked to and when, see Annotation, 94 A.L.R.2d 910, Section 3, at pages 912–14. Again, apparently, state law is viewed as controlling.

**6.** This was also the view of the court in Quinones v. American R. Co., 4 Puerto Rico F. 254 (1908). The rationale generally adopted in all jurisdictions favoring recovery is that the law tends to obligate the parents of illegitimate children for their support and education, and that to foreclose a source of such support for illegitimates alone because of the death of their parents is illogical and arbitrary.

**7.** Noted in 24 Md.L.Rev. 104–5 (1964).

the claim was made for pecuniary loss suffered because of the death of the putative father. The court denied recovery there because, in considering the scope of who may recover under the 1937 amendments to the Lord Campbell's Act, it viewed the Legislature's excision of that paragraph allowing a recovery for the death of the father as having foreclosed the issue.[8] Hence, where an action is brought solely under the Maryland Lord Campbell's Act for damages suffered because of the death of the putative father, there is no remedy available. But this result applies only to that particular situation.

Under other circumstances the Maryland Court of Appeals has allowed illegitimate children to recover damages for pecuniary loss suffered by virtue of the death of their father even though legitimate children also survived. Taylor v. State, Use of Mears, 233 Md. 406, 197 A.2d 116 (1963). In that case the court permitted recovery because the children had first qualified as dependents under Article 101, Section 58, and as such were added to that class of persons entitled to recover under the Lord Campbell's Act. The court, following earlier decisions,[9] held that the two articles, 67 and 101, are in *pari materia* and should be construed together. Thus, where death results to a workman from an activity in "industrial enterprise", his dependents may recover.[10] The court explained its decision at page 413, 197 A.2d at page 119:

"We do not mean to qualify in any way the holding in State to Use of Holt v. Try, Inc., 220 Md. 270, 152 A.2d 126, 72 A.L.R.2d 1232, discussed above. It may be that an anom-

alous situation is presented. Thus, if these illegitimate children in this appeal had not been entitled to sue as dependents under the Workmen's Compensation Act, but had proceeded solely under the wrongful death statute, they would have had no standing to sue, as the appellees candidly admitted at the oral argument. Whatever doubts may exist concerning such a legal incongruity we feel bound by our prior decisions in Clough & Molloy v. Shilling, supra, and Storrs, et al. v. Mech, et al., supra."

Particularly significant for our consideration is the fact that the court felt itself bound by the general language in its opinion in Clough & Molloy and Storrs, both of which were decided before the Legislature enacted the 1937 amendments to the Lord Campbell's Act (wherein it rejected that provision permitting a recovery for the death of an illegitimate's father).

For the purpose of ascertaining the attitude of Maryland law, in general, toward illegitimate children's rights I recognize that the Maryland Workmen's Compensation Act, whether read alone or together with the Lord Campbell's Act, presents an analogy to the FELA. Also important for our purpose is the broad construction that is to be given to the provisions of the Workmen's Compensation Act. A. G. Crunkleton Electric Co., Inc. v. Barkdoll, 227 Md. 364, 177 A.2d 252 (1962). And in the general area of compensation for industrial death, the Maryland Legislature and its courts have specifically included illegitimate children within the category of those who may re-

---

8. See State, Use of Holt v. Try, Inc., supra, at 220 Md. pp. 273–274 and 152 A.2d pp. 127–128.

9. Clough & Molloy, Inc. v. Shilling, 149 Md. 189, 131 A. 343 (1925); Storrs v. Mech, 166 Md. 124, 170 A. 743 (1934); Mech v. Storrs, 169 Md. 150, 179 A. 525 (1935).

10. Huber proposes the argument that since Hannahoe is not a claimant under the Workmen's Compensation Act he is not

entitled to a recovery either under the doctrine of Taylor or under any other theory. This argument is irrelevant. Under the facts of this case none of the dependents could qualify under the Maryland Workmen's Compensation Act. See, Albright v. The Pennsylvania R. Co., 183 Md. 421, 37 A.2d 870 (1944); cert. den. 323 U.S. 735, 65 S.Ct. 72, 89 L.Ed. 589 (1944). Hence, Hannahoe's hypothetical preclusion from benefits thereunder is of no consequence in this case.

cover as dependents. Taylor v. State, supra; see also Mullan Construction Co. v. Day, 218 Md. 581, 147 A.2d 756 (1959), and Code, Article 101, Sections 15, 36(8), 58, 63, 67(10). Further, I do not deem controlling those now whittled-away policy considerations which once upheld the rule of denying illegitimates their rights as "children" not only in the area of inheritance but also in the area of deprivation of support by wrongful industrial death.[11]

A further indication of the tenor of Maryland law on the subject is found in Article 16, Section 66A, of the Code:

"The General Assembly declares its conviction that the State has a duty to ameliorate the deprived social and economic status of children born out of wedlock and that the policies and procedures as contained in this subtitle and in § 66 of this article relative to establishing the paternity of such children, determining who shall have their custody or guardianship and who shall be charged with their maintenance and support are socially necessary and desirable, having as their three-fold purpose (1) the promotion of the general welfare and best interests of such children by securing to them, as near as practical, the same right to support, care and education as legitimate children; (2) the imposition upon both parents of such children the basic obligations and responsibilities of parenthood and (3) the simplification of procedures."

This section of the Code chapter on "infants" was enacted in 1963. Also indicative is the language in § 66J(c), making provision for continuing support of a dependent illegitimate after the father's death. (The obligation to support the infant is described as a debt against the decedent's estate.)

Hence, by recognizing as persuasive those arguments in favor of permitting recovery by illegitimates under the FELA there is no conflict here with local law. Rather, it seems such a holding would be in concert with the desire to relieve the state from any obligation to support illegitimate dependents. Thus, the attitude of the state and the general congressional policy substantially concur on those who may receive benefits which arise from wrongful industrial death.

The final problem before me is raised by the fact that the surviving infant, Dennis Hannahoe, did not live in his father's house and that his support amounted to but $24.00 per month. However, this is not really as vexing as it might appear. It is clear that under the FELA, the requirement of dependency must be met only for those persons who fall into the third category.[12] Hannahoe is in the first category, and therefore it is not necessary to prove dependency, only that he has suffered some pecuniary loss.[13] Pittsburgh National Bank v. The Pennsylvania Railroad Company, 315 F. 2d 606 (3 Cir. 1963). Further, it is federal law—so far as it is defined—which controls in this area of damages and dependency. And Hannahoe's right to make a claim for pecuniary loss is likewise to be determined by federal law. Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949); Chesapeake & Ohio Ry. Co. v. Kuhn, 284 U.S. 44, 52 S.Ct. 45, 76 L.Ed. 157 (1931). Neither is it necessary that Dennis Hannahoe's damages be the result of a total reliance on the decedent for his support. Pittsburgh National Bank v. The Pennsylvania Railroad Company, supra. Thus, if Dennis Hannahoe had a reasonable ex-

11. In Scott v. The Independent Ice Co., 135 Md. 343, 109 A. 117 (1919), a case with facts similar to those in Taylor, recovery was denied both to the decedent's "common-law wife" and to their illegitimate children.

12. 45 U.S.C.A. § 51: " * * * and, if none, then of the next of kin dependent upon such employee * * *."

13. It would appear that under Maryland law dependency is a factor under § 67 (10) of the Workmen's Compensation Act where the child is an illegitimate.

pectation of continued pecuniary support, which has been cut off by virtue of Earl R. Huber's death, he has met the requirements of the FELA. Michigan Central Railroad Company v. Vreeland, 227 U.S. 59, 33 S.Ct. 192, 57 L.Ed. 417 (1913). Accepting Hannahoe's contentions for the purpose of this motion, I determine that she is entitled to make a claim for pecuniary loss under the FELA.

I therefore grant the motion to intervene in accordance with Rule 24(b), F.R.Civ.P. I do not think that by permitting intervention there will result any undue delay or prejudice regarding the adjudication of the rights of the original parties.

An appropriate order will be signed upon presentation by counsel for the intervenor.