Rodney SMITH et al., Plaintiffs,

Irene Hanks Smith, surviving widow of John B. Smith, deceased, etc., et al., Intervenors-Appellants,

v.

CLARK SHERWOOD OIL FIELD CON-TRACTORS, et al., Defendants-Appellees.

No. 71–1570

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Feb. 9, 1972.

Rehearing and Rehearing En Banc Denied April 17, 1972.

John Gano, Houston, Tex., D. Mark Bienvenu, Lafayette, La., for Rodney Smith; Joseph D. Jamail, Jr., Jamail & Gano, Houston, Tex., of counsel.

Timothy McNamara, Lafayette, La., for Clark Sherwood Oil Field Contractors & Employers Mutual Liability Ins. Co. of Wisconsin; Davidson, Meaux, Onebane & Donohoe, Lafayette, La., of counsel.

W. Gerald Gaudet, Lafayette, La., for Quintana Petroleum Corp.; Voorhies, Labbe, Fontenot, Leonard & McGlasson, Lafayette, La., of counsel.

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

* Rule 18, 5th Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

**1340**

LEWIS R. MORGAN, Circuit Judge:

In this suit under the Jones Act, 46 U.S.C. § 688, the personal representative of a deceased seaman seeks to recover death benefits on behalf of the lawful wife and children and also for a child alleged to be the illegitimate daughter of the deceased. The district court granted recovery by adopting stipulations signed by the personal representative and the defendant companies. On the same day the court dismissed the petition for intervention previously granted to the lawful wife and children. Having determined that this case involves two classes of beneficiaries with competing and adverse interests, we reverse the judgment of the district court and the order dismissing intervention.

John B. Smith was employed as roustabout by Clark Sherwood Oil Field Contractors. On April 11, 1967, at the age of 35, Smith drowned while performing work for his employer on a ship owned by Quintana Petroleum Corporation. At the time of his death, Smith was cohabiting in Louisiana with Carol Carpenter and her two-month old daughter, Cheryl Ann Smith, who was allegedly fathered by John Smith. For two years prior to his death, Smith's lawful wife and four legitimate children had been living apart from him in Houston, Texas.

Thirteen days after the fatality, John Smith's brother, Rodney Smith, petitioned the state court in Louisiana to have himself appointed as administrator of the estate. The court granted the petition, and on May 11, 1967, Rodney filed suit in federal district court in Louisiana demanding recovery under the Jones Act, supra, in his capacity as personal representative for the decedent's beneficiaries. In his federal complaint, Rodney stated that Cheryl Ann Smith was in fact the minor child of the deceased and therefore entitled to compensation along with the wife and the four legitimate minor children. Named as defendants in the suit were Clark Sherwood Oil Field Contractors and its insurance carrier, Employers Mutual Liability Insurance Company of Wisconsin, and the Quintana Petroleum Corporation (hereinafter referred to collectively as defendants).

Some five months later the widow, Irene Smith, filed suit in Louisiana state court to replace Rodney Smith as administrator, claiming she was entitled to administer her husband's estate. Although noting that the "widow makes extremely equitable arguments", the Court of Appeal of Louisiana rejected her contentions and upheld Rodney's appointment. Succession of Smith (Ct. of Appeal of Louisiana, Third Circuit, 1969) 219 So. 2d 291, 292.[1]

Failing in this attempt, the widow had herself appointed administratrix of the decedent's estate in Texas and there filed a Jones Act suit in an attempt to recover for the death of her husband.

---

1. In denying the widow relief, the Louisiana court stated as follows:

"The widow makes extremely equitable arguments. She points out that the brother was able to secure appointment unopposed, by moving hastily and without notice. LSA–CCP Art. 3094.1 She further points out that the apparent reason for her husband's brother's applying so swiftly to obtain the appointment as administrator of her husband's estate was to control assertion of a federal Jones Act claim as the seaman's 'personal representative', 46 U.S.C.A. § 688, despite the circumstance that damages recovered by such personal representative are statutorily designated as being for the benefit of the surviving widow and children of the decedent.

"[1] Nevertheless, wisely or unwisely, under the 1960 Code of Civil Procedure, the widow was not entitled to notice that someone else had applied for and received ex parte appointment as administrator of her husband's estate. To receive such notice and an opportunity to contest the appointment of another as administrator, an interested person must file a petition to receive such notification within ten days after the decedent's death (or at least prior to the application of another for appointment). LSA–CCP Arts. 3091, 3094. See Succession of Houssiere, La.App. 3rd Cir., 146 So.2d 483."
219 So.2d at 292.

However, the Texas suit was apparently abandoned when the widow filed a petition to intervene in the Louisiana federal suit contending that Rodney Smith was not adequately representing the interest of herself and her four children. Specifically, Irene Smith claimed that Cheryl Ann Smith was not the natural child of the deceased, and, consequently, Cheryl was not entitled to any compensation as a beneficiary. Initially the district judge allowed Irene Smith to intervene even though her petition for intervention was at all times opposed by Rodney Smith and the defendants.

In the meantime, Rodney Smith began negotiations with the defendants in an attempt to reach a settlement of all claims arising from the death of John Smith. Finally the parties signed stipulations in which it was agreed that Cheryl Ann Smith was the natural child of the decedent. The defendants admitted liability in the amount of $50,000.00[2] to be distributed to the beneficiaries as follows:

| | | |
|---|---|---|
| Irene Hanks Smith ..(widow) ........ | $12,000.00 | |
| Linda Faye Smith ..(legitimate child) .. | 2,500.00 | |
| John Smith .......(legitimate child) .. | 3,500.00 | |
| Jenell Smith .......(legitimate child) .. | 5,000.00 | |
| James Smith .......(legitimate child) .. | 6,000.00 | [3] |
| Cheryl Ann Smith ..(allegedly illegitimate child) .......... | 21,000.00 | |

These stipulations were presented to the court together with two affidavits which alleged that the deceased had publicly acknowledged Cheryl Ann Smith to be his child, and that the deceased was supporting the child up until the date of his death.[4] One of the affidavits was signed by Rodney Smith, the personal representative in this lawsuit.

After considering the stipulations and the attached affidavits the district court entered an order which dismissed the intervention previously granted to Irene Smith. Apparently concluding that the question of Cheryl Ann Smith's paternity was no longer a litigable issue and that all conflict between the personal representative and the widow was resolved, the court stated as follows:

> "*Based upon the unopposed affidavits in the record,* the Court finds that the child, Cheryl Ann Smith, is a child of the deceased, John D. Smith, who was duly acknowledged by him tacitly, and as such, is entitled and has status as a surviving beneficiary of the deceased, John B. Smith, under the Federal Employer's Liability Act." (Emphasis supplied).

Subsequently, the district court entered judgment in favor of Rodney Smith and against the defendants. The court made findings of fact which adopted the factual allegations contained in the stipulations, and in its conclusions of law, the court followed the stipulations and

---

2. One-half of this amount was to be paid by Clark Sherwood Oil Field Contractors and the other half was to be contributed by Quintana Petroleum Corporation.

3. It is undisputed by the defendants that James Smith was mentally deficient and required to attend a special class at school.

4. The affidavit of Rodney Smith is reproduced below. The content of the other affidavit was identical.
   " AFFIDAVIT
   (Filed Oct. 28, 1970)
   STATE OF LOUISIANA
   PARISH OF LAFAYETTE
   BEFORE ME, the undersigned Notary Public, personally came and appeared:
   RODNEY SMITH
   Who after being duly sworn, deposed and said that he was personally and well acquainted with JOHN D. SMITH, CAROL CARPENTER and CHERYL ANN SMITH: that at the time of his death, JOHN D. SMITH was living with the said CAROL CARPENTER and had been living with the said CAROL CARPENTER for at least a year prior to this death; that a child was born to the said CAROL CARPENTER approximately four weeks prior to the death of JOHN D. SMITH, said child being named CHERYL ANN SMITH: that the said JOHN D. SMITH acknowledged the said CHERYL ANN SMITH to be his child, openly and publicly and was maintaining and providing for the said CHERYL ANN SMITH up until the date of his death.
   s/ Rodney Smith
   WITNESSES:
   Mrs. Leon Smith
   Pearl Broussard

awarded recovery in the amount of $50,-000.00 to be distributed to each beneficiary in the same amounts as were agreed upon by Rodney Smith and the defendants. (See page 1340 of opinion, supra).

On the same day judgment was rendered, the court entered a formal order which again stated that the intervention of Irene Smith was dismissed, and that Cheryl Ann Smith was the natural child of the decedent.

In summary, the result of the judgment entered by the district court was that Irene Smith was effectively ousted from the lawsuit and Cheryl Ann Smith was held to be the deceased's child and allowed to participate in the recovery with the five other undisputed beneficiaries. For the reasons that follow we hold that the court erred in its decision.

## I.

At the outset we turn to the district court's holding, based upon "unopposed affidavits in the record", that Cheryl Ann Smith was the child of the deceased. Although not contained in the printed appendix nor cited by either party to this appeal, there was evidence in the record before the district court which clearly controverted what was alleged in the affidavits. When questioned by defendants' counsel on deposition, Irene Smith had the following to say concerning the paternity of Cheryl Ann Smith:

Q. Now, Mrs. (Irene) Smith were you aware at some of this time since 1964, that he (John Smith) was living with another woman in Louisiana?

A. Yes, sir.

Q. All right. Did you realize or have any indication that they also had a child?

A. Well, that I couldn't tell you, sir.

Q. Well, have you heard? I realize you might not know for sure, but had you heard anything to indicate to you that had happened?

A. I'll put it to you this way, they said it was, but *I don't believe my husband could have any more kids.*

Q. All right. What is your reason for believing he could not?

A. *Because my baby was, let's see, he was six and I didn't have any more after that. And I was always getting pregnant, because as you can see, my kids are real close.*

(Emphasis supplied).

Obviously, these statements, combined with the affidavits, created a factual issue which the intervenor was entitled to have adjudicated in open court rather than disposed of summarily by the district judge.[5] The holding that Cheryl Ann Smith is the child of John Smith is reversed.

## II.

Next, we come to the more difficult question of whether Rodney Smith, or any other single representative, could adequately represent all the alleged beneficiaries under the circumstances of this case.

The Jones Act, supra, gives the personal representative of a deceased seaman the right to maintain an action for damages against the decedent's employer when the fatal injury occurred in the course of the decedent's employment. By its terms the statute incorporates the provisions of the Federal Employers' Liability Act, 45 U.S.C. §§ 51–59, which makes common carriers, and therefore shipowners, liable to the deceased employee's personal representative "for the benefit of the surviving widow . . . and children of such employee". 45 U.S. C. § 51. The word "children" as used in this statute includes illegitimate chil-

---

5. Although not necessary to support the holding in this case, we note in passing that Irene Smith objected to the statements in the affidavits (see Note 3, supra) in her exceptions to the court's dismissal of her petition for intervention. This objection by itself would seem to merit an evidentiary hearing in order to afford the widow an opportunity to cross-examine the authors of the affidavits.

dren as well as legitimate children so that Cheryl Ann Smith, if she is indeed the child of John Smith has a cause of action for damages under the Jones Act, supra. See Levy v. Louisiana, 1968, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436, and Hebert v. Petroleum Pipe Inspectors, Inc., 5 Cir. 1968, 396 F.2d 237.

The district court seemed to be of the opinion that Cheryl's alleged right of recovery would have no effect on the amounts the other beneficiaries might receive, and that her paternity was a matter of conflict solely between the personal representative and the defendant companies. In an order [6] clarifying previous rulings, the court stated:

> "There is no conflict of interest between intervenor and Cheryl Ann Smith as a beneficiary such as would require this court to permit her to prosecute her action independently of the suit already filed in her behalf by the recognized personal representative of the decedent's estate. The amount of recovery for each beneficiary will be limited only by the proof of pecuniary losses resulting to the individual in question."

We disagree with this view since an examination of the pertinent authorities reveals that the widow and legitimate children have substantially adverse interest to Cheryl Ann Smith, both in regard to her status as a beneficiary and in regard to the amount she might recover in the event she is found to be the daughter of the deceased.

As the Supreme Court has observed, the personal representative's cause of action is based upon "a liability for the loss and damage sustained by relatives dependent upon the decedent. It is therefore a liability for the pecuniary damage resulting to them, and for that only". Michigan C.R. Co. v. Vreeland, 1913, 227 U.S. 59, 68, 33 S.Ct. 192, 195,

57 L.Ed. 417. The manner in which this pecuniary damage is measured is well illustrated by the case of Petition of Risdal & Anderson, Inc. (D.Mass., 1968) 291 F.Supp. 353, which involved numerous claims by relatives of the seamen who died when the MIDNIGHT SUN was lost at sea with all hands on board. In each instance the calculation of pecuniary loss was based upon a reasonable prediction of how much financial support and personal guidance a particular beneficiary would have received had the decedent lived. In making this determination, the district judge considered many factors such as the number of dependents in a family, the estimated income of the deceased, the probability of a child attending college, the amount of time the deceased would have spent with his children and the decedent's past history of contributions to his dependents.

Applying these standards to the case at hand, it is at once clear that Rodney Smith could not adequately represent both Cheryl Ann Smith and the other beneficiaries in the same lawsuit. The amount Cheryl Ann Smith is entitled to recover, if any, is dependent upon her showing, first, that she is the daughter of the deceased, and secondly, that the deceased probably would have contributed something to her support. Assuming she could make this proof, Cheryl's best case would be to prove that the deceased planned to support her until adulthood and never again spend any of his income on his lawful family. Conversely, the widow and the legitimate children could obtain their maximum recovery by presenting evidence that Cheryl was not the child of the deceased; or, if she was, that the deceased intended to return to his lawful family in Texas and not support or maintain Cheryl.[7] But regardless of the validity of either of these theories, the assertion of one necessarily argues for a diminution of recovery under

6. The order was entitled "Clarification of Rulings Dated March 3rd and March 25, 1970".

7. This statement is more than idle speculation as to claims that might be asserted by Irene Smith. In her deposition Mrs. Smith testified that the decedent informed her daughter, two weeks before his death, that he desired to come back to his family.

the other. We fail to see how one representative could adequately pursue both claims.[7A]

As personal representative Rodney Smith negotiated with the employers of the deceased and, without the consent of Irene Smith, agreed upon certain facts which the widow at all times disputed. The widow's principal objection was to the agreement that Cheryl Ann Smith was the dependent child of the deceased and entitled to recover $21,000.00 of his future income. However, the stipulations went on to recite:

"As further shown by the aforesaid deposition [of Irene Smith], the said Irene Hanks Smith and the four (4) children mentioned hereinabove lived separate and apart from the said John B. Smith for approximately two (2) years before his death on April 11, 1967, and received no support whatsoever from the decedent, and, in fact, never saw decedent during those years."

This statement is in error. In her deposition Mrs. Smith specifically testified that she and her children visited with the deceased one week before his death and that the deceased purchased clothes and toys for the children and gave them what money he could afford.

The inconsistencies between the stipulations and the deposition merely demonstrate the type of problems that may be expected when one representative is allowed to pursue and settle two claims which have the potential of becoming mutually exclusive of one another. In this case we emphasize the fact that, at the time of his death, the deceased seaman was living in Louisiana with another woman and their allegedly illegitimate child, while his lawful family resided separately, several hundred miles away in Texas. If the defendants are liable, the crucial question here is how much of the decedents' income and guidance each family probably would have received had the decedent lived. Yet throughout these proceedings the widow has been deprived of an opportunity to assert, and if necessary to litigate, factual issues which bear heavily on this important question. It is, of course, true that the widow was allowed to intervene temporarily prior to the court's judgment removing her from the lawsuit. However, the district court's final order, adopting most of the stipulations and apportioning recovery in exactly the same manner as the parties agreed upon, makes it plain that this controversy was worked out during negotiations between Rodney Smith and the defendants. The widow was not a party to the negotiations nor did she sign the settlement agreement or accept the court's judgment. Under these circumstances, we hold that Rodney Smith could not have adequately represented the interest of the widow and her children in his meetings with the defendants while at the same time advocating recovery for Cheryl Ann Smith.

In their joint brief on appeal the defendants cite several Supreme Court cases[8] for the proposition that the per-

---

**7A.** It is the view of the dissenting opinion that at best only a "bare possibility" exists that the deceased would have ever returned home. We would hesitate to call such a possibility "bare" in any case where a man has been living apart from his wife and four children for a period of only two years. But in any event, the flaw in this reasoning is that it ignores the widow's claim that she is entitled to an adjudication by the trier of fact on the crucial question of which family would have received the decedent's future support. The widow's proof on this issue may well be lacking and she may end up recovering

nothing. But we cannot deprive her of her day in court on this issue by speculating as to what she might or might not be able to prove once she becomes a party to this litigation. Certainly the deposition of the widow taken by attorneys for Quintana Petroleum does not foreclose the possibility that the widow may be able to successfully argue to the trier of fact that she would have received all the support.

**8.** American Railway Company of Porto Rico v. Birch, 1912, 224 U.S. 547, 32 S. Ct. 603, 56 L.Ed. 879; St. Louis, San Francisco & Texas Railway Co. v. Seale,

sonal representative has the sole power to litigate, settle, and compromise all claims a decedent's beneficiaries may have under the Jones Act, supra. Nevertheless, none of these cases even remotely confront the issue of what a federal court is to do when a seaman dies and leaves behind two classes of dependents with patently conflicting interests. In Petition of Sandra & Dennis Fishing Co. (D. Mass., 1962) 209 F.Supp. 835, the court found a conflict of interest between the personal representative and the minor child of the deceased seaman, and the shipowner argued that the Jones Act, supra, vested the personal representative with exclusive authority to sue. The district judge rejected this argument and held that the child (through a next friend) could maintain her claim independently of the personal representative. And in In re Petition of Risdal & Anderson, Inc., (D.Mass., 1967) 266 F.Supp. 157,[9] the court refused to allow a separate suit by anyone but the personal representative, but it did so on the ground that there was *no conflict of interest* between the decedent's administrator and the dependent child's next friend:

> "With reference to the question whether the child's next friend is one authorized to file a claim on his behalf, a claimant's right of action under the applicable statutes is ordinarily vested in the personal representative of the decedent. 46 U.S.C. §§ 688, 761. In this instance, the decedent was unmarried and there is no conflict of interest or ill-feeling between the child's representative and the administrator of the decedent's estate such

as would warrant an exception to the rule."

266 F.Supp. at 159.

In our view these two decisions give the only reasonable interpretation to the statute as passed by Congress. While the Jones Act, supra, does state in singular form that the "personal representative . . . . may maintain an action for damages at law",[10] the statute also requires that the action be brought *"for the benefit of* the surviving widow . . . and children".[11] (Emphasis supplied). In the case at hand the conflicting nature of the beneficial interests prevented the personal representative from acting for the benefit of all the alleged beneficiaries and the result was that a fiduciary was charged with a duty that he could not effectively perform. Such an illogical result could not have been the intent of Congress.

Having concluded that Irene Smith and her four children are not adequately represented by Rodney Smith, it follows that she qualifies for intervention of right under the literal terms of Rule 24 (a) (2) of the Federal Rules of Civil Procedure, Title 28, U.S.C.[12]

The district court's order dismissing the petition of intervention filed by Irene Smith is hereby reversed and the cause remanded with directions that Irene Smith be allowed to intervene on behalf of herself and as next friend for her four minor children. If she so desires Irene Smith is entitled to a jury determination on the question of whether Cheryl Ann Smith is in fact the child of John Smith. In the event it is determined that Cheryl Ann Smith is a qualified beneficiary, Irene Smith, must be afford-

---

1913, 229 U.S. 156, 33 S.Ct. 651, 57 L. Ed. 1129; Lindgren v. United States, 1930, 281 U.S. 38, 50 S.Ct. 207, 74 L.Ed. 686.

9. This is another case which arose from the sinking of the MIDNIGHT SUN, referred to in the body of this opinion, supra.

10. 46 U.S.C. § 688.

11. 45 U.S.C. § 51.

12. Rule 24(a) (2) provides as follows:
"Upon timely application anyone shall be permitted to intervene in an action: . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

ed an opportunity to present evidence concerning the amount of support she and her children would have received if John Smith had lived.

The district court's judgment approving the settlement agreement between Rodney Smith and the defendants is reversed with directions that no agreement may be approved by the court unless Irene Smith is a party thereto.

Reversed and remanded.

THORNBERRY, Circuit Judge (dissenting):

I respectfully dissent. With all deference to the majority, I believe its opinion flows, albeit charitably, from a misapplication of the facts and law involved in the instant case.

The facts as set out by the majority opinion are largely undisputed. We have here a simple case of a beneficiary's lack of satisfaction with a settlement and stipulations entered into by deceased's personal representative. Deceased's wife and legitimate children complain of their inability to intervene in this Jones Act case in order to protect their interests.

The majority first reverses the district court's holding, "based on unopposed affidavits in the record," that Cheryl Ann Smith was the child of the deceased. This is premised on the conclusion that Irene Smith in her deposition disputed Cheryl Ann's status as the child of deceased and was thus entitled to have the disputed fact issue fully adjudicated in open court rather than disposed of summarily by the district judge.

The majority quotes from Irene Smith's deposition to support its allegation of a factual dispute. In my opinion the quoted language on its face shows no fact on which we can base an assumption that Cheryl Ann was not the child of deceased. The only reason given for Mrs. Smith's belief that Cheryl Ann was not her husband's child was the fact that she and deceased had not had any children during the past few years, two of which years deceased had spent with his mistress. We are invited to infer from

this phenomenon that deceased was incapable of having children at the time of Cheryl Ann's birth. Any such inference, in light of the infinite number of possible explanations for deceased's lack of productivity during these years, can only be classified as self-serving, idle speculation supported by less than a scintilla of evidence.

Aside from my factual dispute with the majority, I question what difference it makes. The district court's judgment was not premised on *undisputed* facts; rather, it was based on facts *stipulated* by the personal representative of deceased, the party to this suit specifically empowered under the Jones Act to bring suit, to stipulate to facts, to enter into settlements, and to accomplish all other acts necessary to protect the interests of the beneficiaries.

If this Court is to reverse this case, it must do so on the sole basis that Rodney Smith, as deceased's personal representative, *could not* adequately represent the interests of all the beneficiaries under the circumstances of the instant case. Only if Irene Smith is deemed to have the right to intervene is there any factual dispute to be resolved. Only then is the standard of review on motion for summary judgment applicable.

The majority next fully and adequately sets forth the applicable principles defining the sole power of the deceased's personal representative to litigate, settle, and compromise the claims of Jones Act beneficiaries. I fully agree with the majority position that were there a conflict of interests among the beneficiaries sufficient to defeat the statutory purpose of the Jones Act in granting an action for the benefit of the surviving widow and children, the district court would have no discretion to deny the right of intervention to the unprotected beneficiary. This right to intervene, however, does not flow from the *refusal* of the personal representative to represent adequately all interests; it must be the result of his *inability* to do so.

I fail to find a single irreconcilable, relevant conflict present in the instant

case sufficient to make the representative incapable of representing all interests. Irene Smith in her brief complains of the following stipulations, which allegedly indicate the conflict facing the personal representative:

(1) Irene Smith and her four children lived separate and apart from deceased for two years prior to his death, during which time deceased lived with his mistress several hundred miles away.

(2) Deceased's legitimate family received no support from deceased during this period of time.

(3) Deceased never saw his family during this period.

(4) Out of the unholy alliance of John Smith and his mistress was born Cheryl Ann Smith.

(5) Cheryl Ann Smith lived with and was dependent on deceased from the time of her birth until deceased's death.

(6) The total pecuniary damage to the beneficiaries was found to be only $50,000.

Not a single fact found in the record contradicts the stipulation that deceased chose to live with his mistress, in lieu of his wife, during the last two years of his life. This is so despite the fact that Mrs. Smith participated in all stages of the district court proceedings prior to the settlement agreement. Likewise, there are no facts which tend to question deceased's failure to support his "legitimate" family in any meaningful way during this period. There is no conflict among the beneficiaries as to the veracity of these stipulations. They are objectively proven facts which fully support the equity of the settlement agreement and the district court's acceptance thereof. It is thus difficult to see any prejudice to Mrs. Smith from her inability to intervene on these points.

Irene Smith does dispute the stipulation that deceased had no contact with his family during the two-year period prior to his death. She testified in her deposition that she and her children visited with the deceased one week prior to his death and that at time deceased purchased clothes and toys for the children and gave the family what money he could afford. Assuming the truth of this self-serving statement, which is supported by no other evidence in the record, it indicates at best only a bare possibility that the wandering deceased would have ever returned to his family or have fully supported them in the future. Moreover, there is ample indication that this bare possibility of future benefit to Mrs. Smith and her children was more than adequately considered by both the personal representative and the district court in apportioning the recoveries. If this had not been the case, Mrs. Smith and her children would have recovered absolutely nothing, as their pecuniary loss would then have been zero. Instead, they received a total of $29,000—well over half the total award. This indicates that the so-called "competing" claims of the beneficiaries not only could be, but were, adequately represented by the deceased's duly-appointed representative. Mrs. Smith and her children are entitled to no more.

There is a clear, factual conflict between the beneficiaries as to the status of deceased as Cheryl Ann's father, although, as previously stated, the factual basis for this conflict is questionable at best. As between the beneficiaries in the instant case, however, there is no conflict of *interests* involved. Whether Cheryl Ann is the child of deceased might present an interesting factual controversy, but the outcome of such an adjudication should make no difference to deceased's family save in their natural desire to protect his reputation. Proof that Cheryl Ann was not deceased's child would in no way rebut the only relevant fact stipulated—that for her entire life Cheryl Ann had been supported by de-

ceased. This latter fact is not disputed by Mrs. Smith, and it is clear to me that its contradiction is the only method by which Mrs. Smith can increase her recovery.

There is no doubt that establishing that Cheryl Ann was not the child of deceased would prevent *her* recovery and diminish the total damages due from the defendants below. The fact remains, however, that these defendants are not complaining of the stipulation. Proof of deceased's lack of paternal connection to Cheryl Ann would not alter his apparent intent to support her—whether she was his child or the child of still another. Only if preventing Cheryl Ann's recovery indicated in some way that Mrs. Smith and her children could expect more future support from her husband could there be any merit to the contention that an irreconcilable conflict has been presented. It is enough to say that Cheryl Ann's failure to recover on the basis of her not being the child of deceased in no way indicates any such probability of increased future support to deceased's wife and natural children. The relevant criteria for damages in this case is not "legitimacy versus illegitimacy"; rather, it is "support versus non-support."

Finally, Mrs. Smith argues that the total recovery is inequitably low. This in no way indicates a contention that the personal representative *could not* represent all beneficiaries adequately; it is instead an allegation that he *did not* represent all of them adequately. No conflict of interests is shown here—all beneficiaries are interested in the total recovery which, assuming the same rate of distribution, would enrich them all. The total recovery relates to the issue of damages between the personal representative and the defendant below, an issue in which Mrs. Smith has no stake *vis-a-vis* the other beneficiaries. There is no doubt that the personal representative *could have* represented all interests adequately by insisting on the maximum possible total recovery. The possibility that he *did not* do so, for whatever reason, is an issue to be raised in a suit against him for breach of fiduciary duty, not by a motion to intervene on the basis of conflicting interests of the beneficiaries.

Because I see no conflict between the interests of the beneficiaries in the instant case and recognize only a possibility that the personal representative in the instant case did not, rather than could not, adequately represent all such interests, I would affirm the judgment of the district court, leaving to Mrs. Smith the decision of whether she should bring a suit for breach of the representative's fiduciary duty.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

THORNBERRY, Circuit Judge (dissenting):

I dissent to the denial of the petition for rehearing for the reasons stated in my dissent to the original opinion.