In the Matter of the Complaint of INDUS-
TRIAL TRANSPORTATION CORP., as
Owner of the MOTOR VESSEL MI-
CHAEL B and the following other pro-
ceedings: 69–C–418, 70–C–783, 69–C–
303, 70–C–1086.

No. 69–C–303.

United States District Court,
E. D. New York.

June 15, 1972.

Jacob Rassner, New York City, Hasson & Tobin, Staten Island, N. Y., for intervenor.

Harry H. Lipsig, by Jack Steinman, New York City, for Carol Kempf.

Joseph E. Doti, Boal, Doti & Larsen, New York City, for Industrial Transportation Corp.

Kirlin, Campbell & Keating, New York City, by James B. Magnor and William C. Morrisey, New York City, of counsel, for Hess Oil & Chemical Corp.

## MEMORANDUM OPINION

COSTANTINO, District Judge.

On March 15, 1972 the tank ship *Michael B.* caught fire and exploded while at dock in the Hess Oil Terminal at Port Reading, New Jersey resulting in the death of Lucien Kempf, a seaman aboard the vessel.[1] Nine days after the accident, a limitation proceeding was filed in this court by the owner of the ill-fated vessel. The following month the charterer initiated a similar proceeding. Subsequently, Carol Kempf, widow of the decedent and administratrix of his estate, on her own behalf and on behalf of two infant children of the decedent born to her during their marriage filed claims in both limitation proceedings and then, after joining as a third-party plaintiff in an action against Hess Oil and Chemical Corp., she began a Jones Act suit against Coastal Petroleum Transport Co. seeking damages for the wrongful death of her late husband.

Discussions among counsel culminated in a settlement agreement on November 19, 1971. While the attorneys for the *Michael B.* and the Hess Oil and Chemical Corp. awaited client approval of the proposed settlement, the attorneys for the administratrix were advised informally of claims to be asserted on behalf of two alleged illegitimate children of the deceased seaman. After the compromise order was submitted to the court, Lorraine Marion Pierce, mother of the decedent's alleged illegitimate children, presented to the court an order directing the parties to show cause why the court should not order her appointment as guardian ad litem for the children to protect any interest they might have in the limitation proceeding brought by the owner of the *Michael B.*[2]

At the threshold of this petition to intervene the court must decide a fundamental question—what law is to be applied by an admiralty court in determining the status of a person before it; more specifically what law determines whether a claimant belongs to a class of potential beneficiaries under an act providing for the welfare of seamen and their dependents.[3] Then, assuming

1. Since there has been no binding resolution of the factual issues presented by this action, facts concerning the happening of the accident related in this memorandum opinion will be deemed established solely for the purpose of deciding the motion before the court.

2. The intervention petition of Lorraine Pierce makes no reference to the Jones Act case commenced by Carol Kempf, *Kempf, Adm'rx v. Coastal Petroleum Transport Co.*, No. 71–C–1086 (E.D.N.Y., filed Dec. 1, 1970). Nevertheless, since the measure of damages in a Jones Act suit is based upon a reasonable prediction of the loss to the beneficiaries derived from

a variety of factors such as the decedent's history of contributions to his dependents as well as estimated future financial support and personal guidance had the decedent lived, a decision favorable to the intervenor here will necessarily affect the outcome in the Jones Act case. See *Smith v. Clark Sherwood Oil Field Contractors*, 457 F.2d 1339, 1343 (5th Cir. 1972) [hereinafter *Smith*].

3. The Jones Act, for example vests in the personal representative of any seaman killed as a result of personal injury incurred in the course of his marine employment a cause of action for damages for the benefit of certain classes of depend-

under the law applied by this court, the two minor children of the intervenor do have an interest to be protected, the court must determine two additional issues: timeliness of the petition and the extent to which a guardian ad litem is necessary to protect the interests of the two minor children.

### Admiralty and Choice of Law

 Maritime law must control all substantive issues in the disposition of maritime claims, regardless of the form or forum of the action. Larios v. Victory Carriers, Inc., 316 F.2d 63, 65 (2d Cir. 1963). The exclusivity of jurisdiction extended to the Federal Government in this area has been thought necessary to "keep the maritime law essentially uniform and harmonious throughout the international and interstate relations of the nation." 1 E. Benedict, The Law of American Admiralty (A. Knauth 6th ed. 1940, Supp. 1971), § 1, at 1 [hereinafter *Benedict*]. Even in the area of welfare legislation which has been thought to be peculiarly within the ken of state power, in order to preserve proper harmony and uniformity, state statutes cannot permissibly contravene general maritime law. See Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1947); see generally 1 *Benedict, supra* § 27, at 58–60. On the other hand, situations can arise where admiralty precedents are either inconclusive or nonexistent. In such situations, however, depending on the nature

of the case and the particular controversy involved, an admiralty court might be required to apply state law. 1A J. Moore, Federal Practice § 0.322[2], at 3731 (2d ed. 1965). See generally Currie, Federalism and the Admiralty: The Devil's Own Mess, 1960 Sup. Ct. Rev. 158. As Judge Sobeloff concluded after analyzing several Supreme Court decisions in this area:

> The determining factor as to which law governs seems to be the availability of an admiralty rule which is generally accepted and clearly defined. Where such a rule exists it will prevail over conflicting local law. . . . ; but where no admiralty rule has been clearly established, an admiralty court will, in the absence of legislation, hesitate to lay down a rule for uniform application in the face of conflicting possible choices.

Bell v. Tug Shrike, 332 F.2d 330, 332 (4th Cir.), cert. denied, 379 U.S. 844, 85 S.Ct. 84, 13 L.Ed.2d 49 (1964).

 The keystone question presented by this petition, rather than involving a matter traditionally committed to the law of the sea or specifically resolved by federal statute, focuses on a matter normally determined by reference to the law of the state of domicile—the question of a person's status vis-a-vis his parentage. Where such a vacuum of authority exists, reference must be made to state law. See Murphy v. Houma Well Service, 409 F.2d 804, 811 (5th Cir.

ents. See 46 U.S.C. § 688 (1970), incorporating by reference the provisions of 45 U.S.C. § 59 (1970). Included as potential beneficiaries are "children" of the deceased. The statute itself, however, does not define "children." On the other hand, it is incontestable, at least in the Second Circuit, that as a matter of statutory construction the Congress intended the illegitimate child of a deceased seaman to have the same beneficial rights under the Act that a legitimate child would have. Civil v. Waterman S.S. Corp., 217 F.2d 94 (2d Cir. 1954). In any case, even if the classes of potential beneficiaries were to be defined in accordance with state law, after Levy v. Louisiana, 391 U.S.

68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968) (an illegitimate child has the same rights a legitimate child would have to recover for the wrongful death of his natural parent), state law could not operate to deprive an illegitimate child of any right if the ground for depriving him of that right was merely the fact of his illegitimacy. See Hebert v. Petroleum Pipe Inspectors, Inc., 396 F.2d 237 (5th Cir. 1968). Of course, merely stating that an illegitimate child can recover under the Act does not answer at all the essential inquiry before the court, i. e., determining whether a particular person is the illegitimate child of the deceased seaman.

1969); Weyerhaeuser Timber Co. v. Marshall, 102 F.2d 78 (9th Cir. 1939); Ingalls Shipbuilding Corp. v. Neuman, 322 F. Supp. 1229, 1234 (S.D. Miss. 1970), aff'd per curiam, 448 F.2d 773 (5th Cir. 1971).[4]

▪ Still, federal courts have found the question of status to be a peculiarly difficult concept with which to deal. This stems, in part, from the absence of a federal law of domestic relations. DeSylva v. Ballentine, 351 U.S. 570, 580, 76 S.Ct. 974, 100 L.Ed. 1415 (1956) (defining the term "child" under § 24 of the Copyright Act, now codified at 17 U.S.C. § 24 (1970)). More importantly, however, reference to state law makes necessary an analysis of the intent and interests to be advanced by the various provisions of state law that are proffered for incorporation by reference into a federal law that is being construed in order to discover that part of state law that would best further the purpose to be achieved by the federal statute. The ultimate and more problematical question, then, is not whether state law should be applied but which state law should be applied. As the *DeSylva* Court clearly indicated, in choosing a part of state law to be incorporated by reference into federal law the choice must be governed by the federal purpose embodied in the federal statute, *id.* at 580–582, 76 S.Ct. 974.

▪ Consequently, where there is more than one state statute that could potentially give meaning to a vague term of status or class in a federal statute the court after analyzing the federal statute and the various state statutes must choose the state statute that will best achieve the purpose to be furthered by the federal statute.[5]

*Proving Filiation Under New York Law*

New York domestic relations law provides a special proceeding through which an illegitimate child can establish the paternity of his putative father. Under the provisions of this law, such a paternity proceeding must be brought in the appropriate Family Court during the lifetime of the father and within two years of the birth of the child. N.Y. Family Law § 517 (McKinney 1963).[6]

4. As a maxim of federal statutory construction mandatory reference to state law in categorizing the status of a person traces its development to Seaboard Air Line Ry. v. Kenney, 240 U.S. 489, 36 S.Ct. 458, 60 L.Ed. 762 (1916). In passing upon an undefined term in the Federal Employer's Liability Act (FELA), the progenitor of the Jones Act, the Court concluded that, while an act of Congress creating a right in favor of a class of persons must by its nature be "paramount and exclusive" in its field of operation, it would be improper to imply from such a genitive act alone an intent to usurp from the states their traditional power in defining status and class by reserving to the federal courts the task of structuring *de novo* the undefined class of beneficiaries. Instead, the Court felt obliged to refer to state law:

> Plainly the statute contains no definition of who are to constitute the next of kin to whom a right of recovery is granted. But, as speaking generally under our dual system of government, who are next of kin is determined by the legislation of the various states to whose authority that subject is normally committed, it would seem to be clear that the absence of a definition in the act of Congress plainly indicates the purpose of Congress to leave the determination of that question to the state law.

> *Id.* at 493–494, 36 S.Ct. at 460. After more than 50 years, the seminal thought of *Seaboard* remains a viable and useful doctrine.

5. In Hammond v. Pennsylvania R.R., 31 N.J. 244, 156 A.2d 689 (1959), the Supreme Court of New Jersey was called upon to determine the meaning of the term "children" as used in the FELA. Relying on *Seaboard* and *DeSylva, supra,* the court held it was obliged to advance the federal purpose of the act:

> The question before us is not what "children" would mean in a statute adopted by our Legislature. It is a federal act we are to apply. And the issue of compatibility with state policy calls for a judicial determination upon a reference to that part of the state law which relates to the subject matter of the federal act.

> *Id.* at 250, 156 A.2d at 692.

6. There is no claim that this type of paternity proceeding was ever brought in

If paternity is established, the Family Court will issue an order of filiation declaring the paternity. An order of filiation once issued will legitimatize the illegitimate child for purposes of New York's inheritance law. See N.Y.E.P. T.L. § 4–1.2(a) (2) (McKinney 1967). Yet, even if New York law provided that a paternity proceeding be used solely to determine filiation for the purpose of ordering payment of support by the father to his illegitimate child or for purposes of the law of inheritance, it might have been arguable under *DeSylva* that the filiation statute was at best inapposite to the interests to be advanced by federal maritime law. But, the New York wrongful death statute, N.Y.E.P.T.L. § 5–4.4 (McKinney 1967), by incorporating the inheritance statute's definition of distributee refers to the filiation statute in determining whether an illegitimate child can be a distributee of a decedent in an action against the tortfeasor whose conduct caused the death of the decedent. Viewed in this light, the respondents argue, therefore, that the court is bound to apply the New York filiation statute and, logically, since neither of the intervenor's children has complied with the statute, the court is further bound to dismiss this petition now before it.[7]

The wrongful death statute, however, is not an exclusive remedy under New York law to recover for the death of another. Though none of the parties has offered it for the court's consideration, the New York Workmen's Compensation Law provides financial benefits to dependents of workmen injured or killed while acting within the scope of their employment. N.Y. Work. Comp. Law § 10 (McKinney, 1965). Clearly, the workmen's compensation law evidences an intent to provide for the benefit of workmen engaged in hazardous employment as well as their dependents a system through which they can receive speedy, certain and adequate provision for their support. Skakandy v. Wreckers & Excavators, 274 App. Div. 220, 81 N.Y.S.2d 841 (3d Dep't 1948), aff'd mem., 298 N.Y. 888, 84 N.E.2d 805 (1949). Moreover, New York has provided that for injuries or death resulting from accidents occurring within the scope of the workman's employment, the schedule of damages contained in the statute is to be the exclusive remedy of the workman or his next of kin against the employer. See Van Wormer v. Arnold, 255 App. Div. 233, 7 N.Y.S.2d 550 (3d Dep't 1938). Accordingly, as a unanimous New York Court of Appeals has made crystal clear, the wrongful death statute is far from being an exclusive remedy; in fact, the remedy under workmen's compensation absolves the employer of any liability under the wrongful death statute. Naso v. Lafata, 4 N.Y.2d 585, 589, 176 N.Y.S.2d 622, 625, 152 N.E. 2d 59, 61 (1958). See also Nulle v. Hardman, Peck & Co., 185 App.Div. 351, 173 N.Y.S. 236 (1st Dep't 1918); De Guiseppe v. City of New York, 188 Misc. 897, 66 N.Y.S.2d 866 (Sup. Ct. 1946), aff'd mem., 273 App.Div. 1010, 79 N.Y. S.2d 163 (2d Dep't 1948).

More important to the issue before the court, under workmen's compensation an illegitimate child acknowledged by his workman-father is deemed a dependent of the workman entitled to receive a proportional share of compensation benefits equal to what he would have received had he been a legitimate child of the workman. See N.Y. Work. Comp. Law § 2(11) (McKinney 1965). Thus, an illegitimate child like the legitimate, has, when applicable, this exclu-

---

behalf of either of the two minor children of the intervenor.

7. Though not conceding the applicability of any provision of state law, the intervenor argues that, in any event, the filiation statute relied upon by the respondent is unconstitutional after the Supreme Court's decision in Levy v. Louisiana, 391 U.S. 68,

88 S.Ct. 1509, 20 L.Ed.2d 436 (1968). See In re Estate of Ross, 67 Misc. 2d 320, 323 N.Y.S.2d 770 (Surr. Ct. 1971); In re Estate of Ortiz, 60 Misc. 2d 756, 303 N.Y.S.2d 806 (Surr. Ct. 1969). In light of the disposition on this petition, *infra*, this constitutional question need not be reached and, accordingly, the court must not pass upon it.

sive remedy against his father's employer. On the other hand, though an illegitimate child can recover under either of these statutory schemes, proof of filiation is treated differently. The workmen's compensation law does not require an order of filiation; all that is required of the claimant is to produce evidence sufficient to satisfy the Workmen's Compensation Board that the deceased workman has acknowledged the claimant as his illegitimate child.[8] Obviously, since the fundamental question before this court involves proof of filiation, whether this court looks to the wrongful death statute or the workmen's compensation law in deciding filiation is a matter of utmost importance. The choice, of course, is governed by determining which of the two New York statutes will best further the objectives of admiralty law. See discussion, *supra*. For the reasons stated below, this court concludes filiation must be determined in accordance with the standards of proof necessary to establish acknowledgement of paternity under New York's Workmen's Compensation Law.

### Seamen and Their Dependents: Wards of Admiralty

In recognition of the risks inherent in maritime employment, admiralty law, through statutory provision as well as by court decision, has evolved a variety of remedies providing comprehensive benefits for those injured while employed on a marine job. Thus, although there is no exclusive plan for recovery for maritime injury and, in fact, for some injuries more than one method of recovery may be available, a basic underlying theme is discernible—where there is a nexus between injury and marine employment the injured seaman and his dependents are protected by admiral-

ty law. As the Supreme Court has indicated, the Jones Act, particularly, being welfare legislation, must be construed so as to "accomplish its beneficent purposes." Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 790, 69 S.Ct. 1317, 93 L.Ed. 1692 (1949). Expanding on this intent to provide for the general welfare of seamen and their dependents, the Court recently overruled an 84-year old decision that held the general maritime law did not afford a cause of action for wrongful death. Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), overruling The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886). Allowing the personal representative of the deceased seaman to continue the wrongful death action, significantly, the Court wrote:

> Where death is caused by the breach of a duty imposed by federal maritime law, Congress has established a policy favoring recovery in the absence of a legislative direction to except a particular class of cases.

*Id.* at 393, 90 S.Ct. at 1783. Clearly, the uniformity and harmony of federal maritime law mandates that remedies extending humanitarian and welfare benefits to seamen and their dependents be liberally construed to achieve maximum coverage. Especially after *Moragne*, see *id.* at 395–396, 90 S.Ct. 1772, anomalies and lapses in this protective shield must be avoided. Accordingly, in order to avoid such anomalies and lapses, the court must examine the various recovery schemes available to the survivors of a seaman killed in the course of performing his maritime duties before choosing that part of state law which will best supplement federal maritime law in determining the status of one who claims to benefit from this protective shield.

---

8. Where there was no valid marriage existing between the deceased and the mother of the child, the illegitimate child must show by way of evidence, that may include birth and baptismal certificates, the existence at some time of a conjugal and family unit and support by his putative father. See Herring v. Great Kills Moving & Storage, Inc., 7 A.D.2d 797, 796, 798, 180 N.Y.S.2d 846, 848–849 (3d Dep't 1958).

*Cause of Action Under the General
Maritime Law*

█ In *Moragne,* supra, a long-shoreman was killed in an accident occurring on board a vessel docked within Florida's territorial waters. Since the accident did not occur more than a ma-- rine league from shore and since no employment relationship existed between the deceased and the owner of the vessel, neither the Death on the High Seas Act, 46 U.S.C. § 761 (1970), nor the Jones Act, *id.* § 688 was applicable. Moreover, Florida's wrongful death statute did not permit recovery based on a claim of unseaworthiness. Fla. Stat. § 768.01 (1965), F.S.A. This, coupled with the obligation incumbent upon a federal admiralty court borrowing the provisions of a state wrongful death statute to give effect to *all* the provisions of the borrowed statute, The Tungus v. Skovgaard, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524 (1959), left the deceased's personal representative without legal remedy against the shipowner. *Moragne,* of course, provided the remedy by overruling *The Harrisburg,* recognizing a nonstatutory cause of action for the wrongful death of one employed as a marine worker.

█ Justice Harlan's reasoning in *Moragne* is as instructive as it is persuasive. Noting that under existing law identical violations of substantive federal maritime law may or may not produce liability depending solely on who the victim was, *e.g.,* seaman or long-shoreman, 398 U.S. at 395–396, 90 S.Ct. 1772; or where the incident occurred, *i. e.,* beyond a marine league from shore or within state territorial waters, id. at 395, 90 S.Ct. 1772, or whether the victim was merely injured, or killed, *id.* and upon concluding that such incongruities were incompatible with the essential uniformity and harmony required by the general policies of federal maritime law, Justice Harlan believed the Court

should exercise its traditional power "to vindicate the policies of maritime law," *id.* at 396, 90 S.Ct. at 1785. He wrote:

[S]trong concern for uniformity is scarcely consistent with a conclusion that Congress intended to *require* the present nonuniformity in the effectuation of the duty to provide a seaworthy ship. Our recognition of a right to recover for wrongful death under general maritime law will assure uniform vindication of federal policies, removing the tensions and discrepancies that have resulted from the necessity to accommodate state remedial statutes to exclusively maritime substantive concepts.

*Id.* at 401, 90 S.Ct. at 1788. Clearly, then, absent specific direction by Congress to the contrary, identical breaches of maritime obligations should produce identical consequences for those similarly situated.

█ On the other hand, the intervenor's claim here requires the court to determine who are beneficiaries of the deceased seaman. As Justice Harlan noted, neither the general maritime law nor the various statutes enacted by Congress providing for recovery for wrongful industrial death have established a common system for specifying which dependents should benefit from such a recovery. *Id.* at 406–407, 90 S.Ct. 1772. Though the Court in *Moragne* left the question of determining which beneficiaries are entitled to recover pursuant to the newly announced cause of action for wrongful death to "further sifting through the lower courts in *future* litigation," *id.* at 408, 90 S.Ct. at 1792, nevertheless, the thrust of the Court's opinion would indicate that in determining beneficiaries an admiralty court must give effect, when faced with an alternative choice of law, to that law that will best effectuate the policies to be advanced by federal maritime law.[9]

9. Appearing as *amicus curiae* in *Moragne,* the United States expressed the view that the Court should adopt the schedule of beneficiaries enacted in the Death on the High Seas Act. The Government's argument for adopting the Act's schedule of beneficiaries is persuasive since the Act is

[t]he only one of [the] statutes that applies not just to a class of workers

Thus, while *Moragne* does not directly pass upon the question of beneficiary determination, it is instructive in its approach to this unsettled area in admiralty law.

### Death on the High Seas Act

█ The Death on the High Seas Act, 46 U.S.C. §§ 761–68 (1970), provides a remedy in admiralty for the death of any person caused by wrongful act, neglect or default, including breach of the warranty of seaworthiness, see Doyle v. Albatross Tanker Corp., 367 F.2d 465 (2d Cir. 1966), where the act or omission causing death occurs beyond a marine league from the shores of the United States.[10] See 1 *Benedict* § 142, at 382. Under the Act the personal representative of the deceased can bring a death action in behalf of an exclusive class of beneficiaries including the "child" or "dependent relative" of the deceased, 46 U.S.C. § 761 (1970). In construing these terms, the Second Circuit held Congress intended uniform construction of this statute without recourse to state law and, also finding that no recourse to state law was necessary to give effect to the Act, the Second Circuit held further that the Act's designation of children of the deceased as a class of beneficiaries included the illegitimate child of the deceased. Middleton v.

Luckenbach S.S. Co., 70 F.2d 326, 329 (2d Cir.), cert. denied, 293 U.S. 577, 55 S.Ct. 89, 79 L.Ed. 674 (1934); accord, Petition of Risdal & Anderson, Inc., 266 F.Supp. 157 (D. Mass. 1967).

*Middleton,* however, did not reach the question now before this court—what law governs when paternity is itself in issue. On this point, unlike *Middleton,* merely giving the statutory language its natural and ordinary meaning without reference to acknowledged aids to statutory construction does not yield a definitive conclusion. Faced with a similar problem in Petition of United States, 418 F.2d 264 (1st Cir. 1969), the First Circuit construed the term "dependent relative" as used in the Death on the High Seas Act without recourse to state law. Adopting the common meaning of "relative" announced in *Middleton,* the court then turned to the problem of defining "dependent." The court concluded that it might be guided in determining dependency by looking to the construction given the term in an analogous federal maritime statute—Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–50 (1970). See 418 F.2d at 271. Thus, it would be reasonable to infer from *Petition of the United States* that in construing any undefined term in the Death on the High Seas Act a court should resort first to analogous maritime statutes. Consequently, in de-

but to any "person," and that bases liability on conduct violative of general maritime law. . . . The borrowing of its schedule of beneficiaries . . . will not only effectuate the expressed Congressional preferences in this area but will also promote uniformity by ensuring that the beneficiaries will be the same for identical torts, rather than varying with the employment status of the decedent. There is no occasion . . . to borrow from the law of the relevant coastal State, since the underlying duties to be effectuated are entirely federal and Congress has expressed its preference of beneficiaries for violations of maritime law.

398 U.S. at 408, 90 S.Ct. at 1791. Even though the Court did not adopt the Government's position, given the potential of this argument, it cannot but add sig-

nificance to cases involving beneficiary determination arising under the Death on the High Seas Act.

10. The remedy provided crew members by the Death on the High Seas Act is not merely an alternate to the relief afforded by the Jones Act. The Death on the High Seas Act provides a remedy for an additional class of beneficiaries. See Petition of Risdal & Anderson, Inc., 291 F. Supp. 353. (D. Mass. 1968). In any case both statutes have been construed to allow recovery by an illegitimate child of a deceased seaman. See text, *infra.* Thus, despite other differences in the respective classes of beneficiaries, decisions determining the status of an alleged illegitimate child arising under the Death on the High Seas Act would be persuasive authority for a similar case arising under the Jones Act.

termining the existence of a parent-child relationship between a seaman and his alleged illegitimate child it would not be at all unlikely that a court would implement the acknowledgement of paternity standard written into the Longshoremen's and Harbor Workers' Compensation Act by Congress.

## Longshoremen's and Harbor Workers' Compensation Act

██ Exercising the exclusive power of the Federal Government in maritime legislation, Congress enacted the Longshoremen's and Harbor Workers' Compensation Act "to provide compensation to employees engaged in maritime employment . . . for disability or death resulting from injury occurring upon the navigable waters of the United States where recovery through workmen's compensation proceedings might not validly be provided by state law," Nogueira v. New York, N. H. & H. R. R.,

281 U.S. 128, 131, 50 S.Ct. 303, 74 L.Ed. 754 (1930). This Act has a humanitarian purpose—intending to protect longshoremen and others engaged in maritime employment by providing compensation for injuries incurred in the course of marine employment.[11] See Union Stevedoring Corp. v. Norton, 98 F.2d 1012, 1016 (3d Cir. 1938); Ruggiero v. Rederiet For M/S Marion, 308 F.Supp. 798, 802 (S.D. N.Y. 1970). Unlike the other marine employment statutes enacted by Congress, this Act specifically provides for recovery by the illegitimate issue of a worker whose employment is covered by the Act. 33 U.S.C. § 902(14) (1970). The test set forth in the statute is one of acknowledgement by and dependency upon the deceased worker, *id.* The standard of acknowledgement established by this act is identical to the standard established by the New York state legislature and embodied in the state's Workmen's compensation law.[12]

11. It is beyond cavil that all the statutes enacted by Congress providing remedies for injuries incurred by those employed in marine-connected jobs have at their root a congressional desire to achieve a humanitarian result. Nevertheless, some courts have distinguished the Longshoremen's and Harbor Workers' Compensation Act from other marine statutes for it alone embodies a "type of humanitarian no-fault recovery," DuPree v. Gulf Oil Corp., 328 F. Supp. 480, 483 (E.D.Tex.1971); a concept foreign to maritime law, *Moragne, supra,* 398 U.S. at 407, 90 S.Ct. 1772, 26 L.Ed.2d 339. On the other hand, the obligation of seaworthiness, enforceable against the shipowner by suit under the Jones Act, is not that far removed from no-fault theory and is, in fact, an absolute duty:

> [C]onsiderations arising from the hazards which maritime service places upon men who perform it, rather than any consensual basis of responsibility, have been the paramount influences dictating the shipowner's liability for unseaworthiness as well as its absolute character. It is essentially a species of liability without fault, analogous to other well known instances in our law. Derived from and shaped to meet the hazards which performing the service imposes, the liability is neither limited by conceptions of negligence nor contractual in character. . . . It is a form of

> absolute duty owing to all within the range of its humanitarian policy.

Seas Shipping Co. v. Sieracki, 328 U.S. 85, 94–95, 66 S.Ct. 872, 877, 90 L.Ed. 1099 (1946) (defining purpose of the Jones Act). Consequently, while this Act is distinguishable from similar acts passed by Congress covering marine employment, it is not so estranged in theory that it cannot serve in construing provisions of the other acts. In fact, one court has already done so. Petition of United States, 418 F.2d 264 (1st Cir. 1969).

12. This definition has been held to be complete in itself, obviating the need to make a reference to the law of the state of domicile in order to determine whether the illegitimate child had been acknowledged by the deceased. See Weyerhaeuser Timber Co. v. Marshall, 102 F.2d 78, 81 (9th Cir. 1939). At the same time, however, this Act is based upon New York's Workmen's Compensation Law, see Lawson v. Suwanee Fruit & S.S. Co., 336 U.S. 198, 205, 69 S.Ct. 503, 93 L.Ed. 611 (1949); Iacone v. Cardillo, 208 F.2d 696 (2d Cir. 1953). Thus, since the domicile of the deceased seaman and of the intervenor's children is New York, the case law this court will apply in determining the status of claimants, *i.e.,* cases arising under New York's Workmen's Compensation Law, has already been held to be at least persuasive

## Conclusions From Admiralty Law

Congress has enacted three statutes—Jones Act, Death on the High Seas Act, Longshoremen's and Harbor Workers' Act—expressing its intent to provide humanitarian relief for the marine worker and his dependents for injuries incurred by him in the course of his employment. Additionally, in *Moragne* the Supreme Court has recognized a new federal remedy in allowing suits for wrongful death to be brought under the general maritime law. Furthermore, under all three statutes as construed by the courts and in the new cause of action recognized in *Moragne,* the illegitimate issue of a marine worker injured or killed in the course of his employment can recover in the same manner a natural child could. On the ultimate question before this court—determining filiation between a deceased marine worker and his alleged illegitimate issue—only one statute, the Longshoremen's and Harbor Workers' Compensation Act, contains a specific provision for the inclusion of illegitimates within the class of beneficiaries, thus

establishing a standard to prove filiation, *i.e.,* acknowledgement by the father. Yet, superimposed on what is otherwise statutory silence is the obligation of the court to construe enactments of Congress dealing with maritime affairs so as to further harmony and uniformity in admiralty matters. Nevertheless, as this opinion has indicated, in order to achieve such harmony and uniformity the court must look to analogous marine statutes. Here while the other statutes are silent, the Longshoremen's and Harbor Workers' Compensation Act does speak to the issue before the court. At minimum, then, this court faced with a choice between the provisions of two state statutes and where the provisions of one of the statutes is synonymous with the standard established by the only federal marine statute specifically dealing with the issue before the court, the court must give effect to that state statute. Accordingly, this court will adopt the provisions of the New York Workmen's Compensation Law in determining whether the intervenor's minor children are in fact the illegitimate issue of the deceased seaman.[13]

authority in cases arising under this Act. See Wynn v. Kelley, 228 F. Supp. 875 (D.D.C.), aff'd, 343 F.2d 295 (D.C.Cir. 1963); McCabe Inspection Service, Inc. v. Willard, 143 F. Supp. 393 (S.D.N.Y.), aff'd, 240 F.2d 942 (2d Cir. 1956).

13. Since a Jones Act suit has already been commenced by the widow and legitimate issue of the deceased seaman, see note 2 *supra,* it is very probable that should this court find, after hearing evidence, that the minor children of the intervenor are the illegitimate issue of the deceased, intervention will then be sought in that action. Of course, though the Jones Act itself is no clearer in providing benefits for the illegitimate children of a deceased seaman, see note 3 *supra,* the conclusions gained from reviewing admiralty law are just as applicable. Moreover, cases arising under the Federal Employer's Liability Act, the progenitor statute of the Jones Act, see note 4 *supra,* arrive at the same result, *i.e.,* applying state workmen's compensation law definitions to wrongful industrial death cases actionable under the FELA.

In Tune v. Louisville & Nashville R.R., 223 F.Supp. 928 (M.D.Tenn.1963), looking to the provisions of Tennessee's workmen's compensation act rather than its wrongful death statute, the court held the illegitimate children of a deceased railroad employee to be "children" within the meaning of the FELA. The court, citing both *Seaboard, supra* and *DeSylva, supra,* wrote:

[T]he Wrongful Death Act of Tennessee is not analogous to the FELA, and should not be deemed controlling on the issue whether dependent illegitimate children under Tennessee law are to be included in wrongful death actions under the FELA.

. . . The general purpose of the Tennessee Workmen's Compensation Act [on the other hand] was to give compensation to the dependents of the deceased employee and relieve the state or public of the burden of their support. This same general purpose has been found in the FELA by the Supreme Court.

*Id.* at 933–934. Unlike the Tennessee statute which merely permits the survival of the deceased's cause of action for his

# 1322

## Timeliness of the Petition

Noting that the claims contained in the petition were advanced almost three years after the decedent's death, the respondents argue that these claims are time-barred. The court cannot concur. It is a well-established principle of admiralty law that when a "limitation proceeding is pending and undetermined, and the rights of the parties are not adversely affected, the court will freely grant permission to file late claims." 3 Benedict, supra, § 518, at 542, cited in Texas Gulf Sulphur Co. v. Blue Stack Towing Co., 313 F.2d 359 (5th Cir. 1963). Here, the limitation proceeding is still pending and the claim being advanced will add nothing to the shipowner's ultimate liability should the proceeding continue to trial. Moreover, under the theory of the Jones Act suit, even the legitimate issue and widow of the deceased will not be adversely affected since, theoretically, had the deceased lived they still would share with the illegitimate issue the love, affection and financial contributions of the father. Additionally, since the issues presented by this petition are novel and the real parties in interest are under the disability of infancy, and especially where the equitable doctrine of laches rather than a time limitation fixed by statute is applicable, the court would be abusing its discretion to find this petition time-barred.[14]

## Guardian ad Litem

In light of the court's ruling that filiation must be determined in accordance with the proof required to establish paternity under the New York Workmen's Compensation Law, the intervenor's children are entitled to a full evidentiary hearing to prove they are in fact issue of the deceased seaman, Lucien Kempf.[15] Consequently, at least at

injuries, New York's wrongful death statute is modeled after Lord Campbell's Act and creates a new cause of action in the personal representative of the deceased. This difference, however, does not warrant reaching a contrary result. In fact, Huber v. Baltimore & O.R.R., 241 F. Supp. 646 (D.Md.1965), a case almost identical to Tune, looked to the workmen's compensation act even though the wrongful death statute was derived from Lord Campbell's Act. The court, emphasizing the industrial connection with the wrongful nature of the death, held:

> For the purpose of ascertaining the attitude of Maryland law, in general, toward illegitimate children's rights I recognize that the Maryland Workmen's Compensation Act, whether read alone or together with the Lord Campbell's Act, presents an analogy to the FELA. Also important for our purpose is the broad construction that is to be given to the provisions of the Workmen's Compensation Act. And in the general area of compensation for industrial death, the Maryland Legislature and its courts have specifically included illegitimate children within the category of those who may recover as dependents.

Id. at 651–652. See also Hammond v. Pennsylvania R.R., 31 N.J. 244, 156 A.2d 689 (1959). Thus, in cases under the FELA involving wrongful industrial

death where resort to state law is necessitated, the court should look to and incorporate by reference the state workmen's compensation law.

14. The timeliness of actions brought under the Jones Act is governed by the three-year statute of limitations set forth in the Federal Employer's Liability Act. Engel v. Davenport, 271 U.S. 33, 46 S.Ct. 410, 70 L.Ed. 813 (1926). Consequently, had this claim originated in the form of a Jones Act suit, it still would be timely. Moreover, the three-year statute of limitations provided in the Jones Act is persuasive that laches should not be a bar in an analogous admiralty proceeding where the claim arose less than three years before intervention is sought.

15. Though this court will apply the substantive law provided in the state workmen's compensation statute, needless to say, the procedural law that must be applied at this hearing is peculiarly federal. More specifically, while the court is not ruling on the argument at this juncture, reliance on New York's "Dead Man's Statute," N.Y.C.P.L.R. § 4519 (McKinney 1963), to exclude certain evidence at the hearing might be misplaced; at least one court has already held that § 4519 is inapplicable to a cause of action arising under federal law. Courtland v. Walston & Co., 340 F. Supp. 1076, 1085–1092 (S.D.N.Y. 1972).

this stage, a guardian ad litem must be appointed to represent the interest of the intervenor's children in the limitation proceeding. Thus, the petition of Lorraine Marion Pierce to intervene in this action must be granted.[16]

### Conclusion

The petition to intervene is granted. So ordered.

See also D.C., 319 F.Supp. 612.

16. Under the Jones Act the personal representative of the deceased seaman is given the right to sue the seaman's employer for damages allegedly resulting from the injury incurred in the course of the decedent's employment. Should the intervenor's children prove to the court's satisfaction, however, that they are the issue of the deceased, a conflict would then exist between the interest of the personal representative, Carol Kempf, and the interests of the intervenor's children. At that time, the court will entertain a motion by the intervenor to intervene on behalf of her children in the Jones Act suit initiated by the decedent's representative. See *Smith, supra,* discussing the court's power to grant such intervention.